J-S51034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FAUSLET ALCEUS | : | |
| | : | |
| Appellant | : | No. 623 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 29, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005177-2017

BEFORE: MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:      **FILED: JANUARY 5, 2021**

Fauslet Alceus (Appellant) appeals from the judgment of sentence imposed in the Dauphin County Court of Common Pleas following his jury conviction of aggravated assault[1] and related charges for the physical assault of his pregnant ex-wife and their one-year-old twins.[2] On appeal, Appellant challenges the trial court's denial of his pretrial motion to dismiss the charges based on a violation of Pennsylvania Rule of Criminal Procedure 600, the court's refusal to exclude evidence of his purported prior bad acts, and the sufficiency of the evidence supporting his convictions. We affirm.

---

[1] 18 Pa.C.S. § 2702(a)(1).

[2] The exact age of the twin is unclear in the record. Although the trial court refers to them as "15-month-old twins," the investigating police officer testified the children were "around one-year, 13 months." Trial Ct. Op., 6/15/20, at 2; N.T., 10/21/19, at 115.

The facts, as presented during Appellant's jury trial, were detailed by the trial court as follows:

On the night of September 8, 2017 and into the early morning of September 9, 2017, Angelica Fernandez Rodriguez [(Rodriguez)] was staying at her mother's home in Harrisburg with her five children. [ ] Rodriguez, also five months pregnant, was planning on leaving her husband, . . . Appellant. While sleeping in the early morning of September 9, 2017, [ ] Rodriguez was awoken by Appellant physically beating her. Appellant was able to gain access to the apartment building because the entrance to the apartment building was broken at the time. [ ] Rodriguez's 8-year-old son opened the apartment door for Appellant after he knocked. Appellant was screaming at her while the children watched him physically punch her body with closed fists. At one point, Appellant put both hands around her neck. [ ] Rodriguez attempted to get her crying . . . twins, but ended up falling with them due to what she believed to be a broken leg. [ ] Rodriguez attempted to leave the situation however she had a hurt leg and was holding one twin in each arm. While [Rodriguez was] sitting against a wall with her twins, Appellant used both hands around her neck until [ ] Rodriguez had difficulty breathing, became lightheaded, and had blurred vision. [ ] Rodriguez was not able to get to a cell phone to call for help because it was broken during the fight. Appellant, knowing that [Rodriguez] was pregnant, continued to kick her along her stomach area.

Still angry, Appellant left [ ] Rodriguez'[s] mother's home as the sun came up. [Rodriguez's mother] came home later in the day and took [ ] Rodriguez and her children to Harrisburg Hospital.

On September 9, 2017, Officer Matthew Gallup was . . . dispatched to Harrisburg Hospital for a report of an assault [and was then] directed to [ ] Rodriguez'[s] hospital room. . . . Rodriguez indicated that she had been assaulted. Officer Gallup observed physical injuries on her face, including a swollen right eye, redness down her cheek, and scratches on her left eye, cheek area, and neck. She also complained of knee and side pain. [Rodriguez, who was pregnant,] also indicated to Officer Gallup that she had been kicked or assaulted in her stomach area. [She] completed a domestic violence statement form[, as well as] a strangulation questionnaire. [Both forms were] in the victim's

own handwriting and in [her] own words. [ ] Rodriguez told Officer Gallup that Appellant . . . was the one who assaulted her and her children.

Officer Gallup observed [ ] Rodriguez'[s] . . . twins at the hospital. The male twin had a large lump on his forehead with an abrasion as well as a cut on the other side of his face and on his eyebrow. The female twin had a small cut or laceration on the top of her heard towards the back of her head and side of her hair. [A] forensics officer[ ] came to the [hospital] to take photos of the twins and [ ] Rodriguez in the presence of Officer Gallup.

* * *

. . . [N]urse Faith Dreibelbis was working . . . as a triage nurse [when Rodriguez and her children arrived] at the hospital at approximately 6:45 in the evening [on September 9, 2017.] Rodriguez told [Nurse] Dreibelbis that she had been assaulted. [ ] Rodriguez received an X-ray of her knee[ and] her spine, as well as an ultrasound. [Nurse] Dreibelbis observed a laceration above the eyebrow and alon[g] the right hairline of the male twin, and a laceration on the scalp of the female twin. [Nurse] Dreibelbis also observed redness and scratches along the male twin's back that were not depicted in photographs.

[Nurse] Dreibelbis contacted YWCA upon request of [ ] Rodriguez and a representative came to be with her when she was in the emergency department. She also contacted Harrisburg Police Department, which is typical practice when patients report that they have been assaulted. [Rodriguez] was discharged from the hospital around 1:00 a.m. on September 10. 2017. The children were discharged at 10:46 p.m. on September 9, 2017.

Trial Ct. Op. at 2-4 (record citations and footnotes omitted).

A criminal complaint was filed against Appellant on September 10, 2017.

Appellant was subsequently charged with aggravated assault (three counts),

aggravated assault of unborn child, strangulation, endangering the welfare of

a child (two counts), and corruption of minors.[3]  ***See*** Appellant's Information, 12/19/17, at 1-2 (unpaginated).  More than two years later, on October 17, 2019, Appellant filed a motion to dismiss the charges based on a violation of Pa.R.Crim.P. 600.[4]  The case proceeded to a jury trial commencing on October 21, 2019.  Prior to the start of testimony, the trial court heard argument on Appellant's Rule 600 motion, and denied it.  ***See*** N.T., 10/21/19, at 5-7.

At trial, Appellant testified in his own defense, and denied he committed the assault on Rodriguez and the twins.  He claimed he was not at Rodriguez's mother's apartment on the night of the incident, and that his relationship with Rodriquez had ended in early July 2017.  ***See*** N.T., 10/21/19, at 124. Appellant claimed that on the evening of September 8, 2017, he was at the Hollywood Casino with a friend until midnight.  ***Id.*** at 127-28.  They then returned to his friend's apartment, where he had been staying.[5]  ***Id.*** at 128. Appellant testified they talked for "a couple hours," and went to sleep around 2:00 a.m. on September 9th.  ***Id.*** at 129.  He claimed that Rodriguez's mother called him around 2:00 p.m. that afternoon, which was the first time he learned of the allegations.  ***Id.*** at 130.  Appellant denied ever harming

---

[3] 18 Pa.C.S. §§ 2702(a)(1), (8), 2606(a), 2718(a)(1), 4304(a)(1), and 6301(a)(1)(i), respectively.

[4] As will be discussed ***infra***, Rule 600 requires the Commonwealth to try a defendant within 365 days of the date the complaint is filed.  ***See*** Pa.R.Crim.P. 600(A)(2)(a).

[5] Appellant also stated his car was "broken" at the time, so his friend drove them to the casino and back home.  N.T., 10/21/19, at 128-29.

Rodriguez or their children, and testified he had last seen Rodriguez on September 2, 2017. *Id.* at 131-32. After Appellant's testimony, the jury was shown a video of a Child Resource Center interview with one of Rodriguez's minor children (T.R.) who was present at the time of the incident. *See id.* at 141.

At the conclusion of trial, the jury returned a verdict of guilty on all charges. On January 29, 2020, the trial court sentenced Appellant to an aggregate term of seven to 14 years' imprisonment, followed by six years' probation. Appellant filed a timely post-sentence motion, which the court denied by order entered March 16, 2020. This timely appeal follows.[6]

Appellant raises three issues on appeal:[7]

> [1] Did [the trial court] err in denying [Appellant's] Rule 600 motion?
>
> [2] When a victim states that there is a history of violence, compounded with a judge stating that the victim is confusing or

---

[6] Appellant's notice of appeal incorrectly stated the appeal was from "the verdict of the Jury Trial entered on this matter on October 22, 2019, and the denial of Rule 600 on October 21, 2019." Appellant's Notice of Appeal, 4/15/20. In a criminal case, the appeal lies from the judgment of sentence, made final by the denial of a timely filed post-sentence motion. *Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*). Thus, our Prothonotary has corrected the caption accordingly.

Furthermore, we note that Appellant complied with the trial court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[7] We have reordered Appellant's issues for ease of disposition.

combining events, does this testimony create an unfair prejudice against [Appellant] making it inadmissible under Pa.R.E. 403?

[3] Whether the evidence presented at trial was insufficient as a matter of law to support a finding of guilt on all counts as [Appellant] was not present at the scene when the incident to the victim occurred?

Appellant's Brief at 10-11 (footnote omitted).

In his first issue, Appellant contends the trial court erred in denying his pretrial motion to dismiss the charges based on a violation of Pa.R.Crim.P. 600. Appellant's Brief at 27.

Rule 600 requires that "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). In determining whether trial was conducted in a timely manner, the Rule provides that "periods of delay at any stage of the proceedings caused by the Commonwealth **when the Commonwealth has failed to exercise due diligence** shall be included in the computation of the time within which trial must commence[,]" but that ["**a**]**ny other periods of delay shall be excluded from the computation**." Pa.R.Crim.P. 600(C)(1) (emphasis supplied). When a defendant is not brought to trial within the requisite time period, "at any time before trial, . . . the defendant . . . may file a written motion requesting that the charges be dismissed with prejudice[.]"

Pa.R.Crim.P. 600(D)(1). The trial court is required to hold a hearing on the motion before entering a ruling.[8] *Id.*

We review the trial court's grant or denial of a defendant's Rule 600 pretrial motion to dismiss for an abuse of discretion. ***Commonwealth v. Andrews***, 213 A.3d 1004, 1010 (Pa. Super. 2019) (citation omitted), *appeal denied*, 222 A.3d 376 (Pa. 2019). In doing so, our scope of review is limited to the trial court's findings, and the evidence presented at the Rule 600 hearing. *Id.* Furthermore, we "must view the facts in the light most favorable to the prevailing party." *Id.*

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters . . . , courts must carefully factor into the ultimate equation not only the prerogatives of the individual

---

[8] We note that the trial court did not conduct a separate hearing on Appellant's motion to dismiss, but rather, considered the motion prior to the start of trial on October 21, 2019. *See* N.T., 10/21/19, at 5-7. Appellant did not object or request more time to present additional argument or evidence, nor does he raise a challenge on this basis on appeal. Thus, we conclude the trial court complied with the requirements of the Rule.

accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Moore*, 214 A.3d 244, 248 (Pa. Super. 2019) (citation omitted).

A defendant is not automatically entitled to relief under Rule 600 when a trial commences more than 365 days after the complaint is filed. *Moore*, 214 A.3d at 248. Rather, dismissal of the charges is the appropriate remedy only when the defendant is not brought to trial within the adjusted run date, which accounts for excludable and excusable time under the Rule. *Id.*

> "Excludable time" is classified as periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence. Pa.R.Crim.P. 600(C)(1).

*Id.* at 248-49 (some citations omitted). We note "[t]he Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence." *Commonwealth v. Plowden*, 157 A.3d 933, 941 (Pa. Super. 2017) (*en banc*).

Here, Appellant's criminal complaint was filed on September 10, 2017; thus, his mechanical run date was September 10, 2018. However, he was not brought to trial until October 21, 2019. In his motion to dismiss, Appellant

agreed the following time periods should be counted against the defense: (1) December 21, 2017, to May 29, 2018 (159 days); (2) June 25, 2018, to December 10, 2018 (168 days), and (3) January 14, 2019, to February 11, 2019 (28 days). *See* Appellant's Motion to Dismiss for Violation of Rule 600, 10/17/19, at ¶¶ 7-9, 11-12, 14. These time periods extended Appellant's Rule 600 run date an additional 355 days, or until September 3, 2019.[9] Furthermore, the Commonwealth contends that the 27-day period from May 29, 2018 (a hearing on Appellant's request for a bail modification), and the next scheduled trial date of June 25, 2018, should also not run against the Commonwealth. *See* Commonwealth's Brief at 8-9; Commonwealth's Answer to Appellant's Motion to Dismiss for Violation of Rule 600 (Commonwealth's Answer), 10/18/19, at ¶ 10. We agree. After the court conducted a hearing on Appellant's bail modification request — which the court denied — the case was promptly scheduled for trial less than a month later. Pursuant to Rule 600(C)(1), we conclude this was not a delay caused by the Commonwealth's failure to exercise due diligence. Accordingly, Appellant's run date was extended another 27 days, or until September 30, 2019. Appellant's trial commenced 21 days later.

_____

[9] The 355th day was Saturday, August 31, 2019, and Monday, September 2, 2019, was Labor Day. Thus, the Commonwealth would have had until Tuesday, September 3rd to bring Appellant to trial. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of [a time period in a statute] shall fall on a Saturday or Sunday, or one any day made a legal holiday . . . such day shall be omitted from computation.").

In his brief, Appellant argues only "two time periods are disputed[:]" (1) the 35-day period between December 10, 2018, and January 14, 2019, and (2) the 237-day period between February 26, 2019, and October 20, 2019.[10] Appellant's Brief at 29, 41. With regard to the first time period, Appellant insists the Commonwealth "negligently failed to keep adequate records and failed to disclose required discovery material until the parties had no choice but to file a continuance[.]" *Id.* at 29. Further, with regard to the second time period, Appellant maintains the Commonwealth "failed to procure the attendance of a material witness, [Rodriguez], even though she was in state custody twice, and the Commonwealth merely exchanged e-mails expressing hope that [she would] be found." *Id.* at 30.

Upon our review of the record, we conclude no relief is warranted. The Commonwealth does not dispute that just before the December 2018 trial date, the prosecutor assigned to the case "found an email that was in the back of the file that mentioned a [CRC] interview" with one of Rodriguez's children. Commonwealth Answer at ¶ 13. The Commonwealth maintains it immediately obtained a summary of the interview, which it turned over to Appellant's counsel. *Id.* Furthermore, the Commonwealth avers that "[b]ased on the summary, [Appellant's] counsel did not see a concern in proceeding to trial."

---

[10] Appellant concedes that during the second time period, the Commonwealth "acted diligently" in attempting to locate Rodriguez from February 11, 2019, until February 26, 2019, when Rodriguez was purportedly "at the Harrisburg Police Department." Appellant's Brief at 41. This fifteen-day period would extend Appellant's run date until Monday, October 7, 2019, since the fifteenth day, October 5, 2019, was a Saturday. *See* 1 Pa.C.S. § 1908.

*Id.* Although the case remained on the trial list for the week of December 10th, the Commonwealth contends it "received an email from defense counsel that there was a death in the firm and he was assisting in covering hearings;" thus, the case was moved to the January term. *Id.* After reviewing these averments, the trial court found this time period did not run against the Commonwealth. We detect no basis to disagree.

Both the trial court docket and the corresponding scheduling order indicate the continuance of trial in mid-December of 2018 was due to a **defense** request. *See* Docket Entry, 12/14/18; Order, 12/13/18. Although Appellant argues he was forced to delay trial due to the Commonwealth's purported discovery violation, he does not dispute the Commonwealth's assertion that his counsel requested the continuance as a result of a death in the firm. The Commonwealth's belated discovery of an email reference to the CRC interview does not necessarily demonstrate a lack of due diligence. *See* ***Moore***, 214 A.3d at 249 ("Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth."). Indeed, as soon as the prosecutor learned of the interview, they obtained a summary and alerted Appellant's counsel. Further, it appears the parties still intended to proceed to trial until the death in Appellant's counsel's firm. Because we agree with the trial court that this 35-day period does not run against the Commonwealth, Appellant's

run date was extended beyond October 21, 2019.[11]   Thus, no Rule 600

violation occurred, and Appellant's first issue fails.

Next, Appellant contends he is entitled to a new trial because the trial

court erred in admitting evidence of a "history of violence" between Appellant

and Rodriguez.   Appellant's Brief at 18.   This claim involves the following

exchange during Rodriguez's direct examination:

> [Commonwealth:  A]t what point does [Appellant] strangle you,
> as you said?
>
> [Rodriguez:]  It's a lot of stuff that happened that night.  It's like
> everything is, like, a blur and that's, like, a while ago and we have,
> like years of history of violence, so it's like a lot of — I don't know.
>
> > [Appellant's counsel:]  I'm gonna have to object to that,
> > Your Honor, the relevance to that statement.
> >
> > THE COURT:  Well, I mean, I think she's confusing or maybe
> > she's just combining all the events that occurred, so I believe it's
> > relevant.  So we're specifically asking about this certain night.
>
> [Rodriguez:]  Um-hum.
>
> THE COURT:  Okay.
>
> [Rodriguez:]  It's like a blur.  I can't remember everything.

N.T., 10/21/19, at 55-56.

Appellant argues Rodriguez's statement concerning her "history of

violence" with Appellant constitutes inadmissible prior bad act evidence.

Appellant's Brief at 18.   Pursuant to Pennsylvania Rule of Evidence 404(b),

---

[11] Because we conclude the first time period at issue did not run against the Commonwealth and extended Appellant's run date beyond the commencement of trial, we need no consider whether the second time period was "excusable delay."  **See Moore**, 214 A.3d at 248.

evidence of a defendant's prior bad acts is inadmissible to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[;]" however, it may be admissible for other purposes, so long as "the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(1)-(2). Here, Appellant concedes Rodriguez's statement was "relevant," but insists it was "substantially prejudicial" and of "little probative value as to the events that alleged to have occurred" on the night in question. Appellant's Brief at 20-21. Thus, he urges this Court "to exclude the victim's admission that a "history of violence," occurred between herself and [Appellant] and order a new trial[.]" *Id.* at 27.

No relief is warranted. Preliminarily, we note that the Commonwealth did not seek to present evidence of a history of violence between the parties, nor did it question Rodriguez in such a way as to elicit her response. Thus, contrary to Appellant's characterization, the trial court did not "admit" any evidence of his prior bad acts. Rather, Rodriguez blurted out the statement in an unresponsive answer to the Commonwealth's question.

Moreover, trial counsel's only objection to the statement was on the basis of "relevance." *See* N.T., 10/21/19, at 55. Although the trial court found the statement relevant, it instructed Rodriguez that she was being asked about only about the night in question. *See id.* at 56. Counsel did not argue, as Appellant does now on appeal, that the statement was more prejudicial than probative under Rule 404(b)(2). Accordingly, that objection

- 13 -

is waived. ***See Commonwealth v. Cousar***, 928 A.2d 1025, 1041 (Pa. 2007) (appellant waived objection that probative value of evidence concerning defendant's connection to gang activity was outweighed by potential for prejudice when objection at trial was limited to relevance).

We further note that trial counsel did not move for a mistrial based upon Rodriguez's unsolicited comment, nor did counsel ask the court to provide any type of limiting instruction to the jury. Thus, we conclude Appellant's present claim — that Rodriguez's comment was so prejudicial it warranted a new trial — is waived on appeal. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Lastly, Appellant argues the evidence presented at trial was insufficient to support his convictions. Appellant's Brief at 41. Our standard of review of sufficiency claims is well-established:

> We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact — while passing on the credibility of the witnesses and the weight of the evidence — is free to believe all, part, or none of the evidence. **In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder**.

***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (citation omitted and emphasis added). Furthermore, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense,

- 14 -

so long as that testimony can address and, in fact, addresses, every element of the charged crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa. Super. 2018), *appeal denied*, 205 A.3d 315 (Pa. 2019).

Preliminarily we note that while Appellant's sufficiency challenge in his brief argues several bases for overturning his convictions, the only claim preserved in his Pa.R.A.P. 1925(b) statement is that the evidence was insufficient to support the jury's verdict because he "was not present at the scene when the incident . . . occurred." ***See*** Appellant's Concise Statement of Matter Complained of on Appeal Pursuant to Rule 1925(b), 5/12/20, at 2 (unpaginated). "It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." ***Commonwealth v. Bonnett***, 239 A.3d 1096, 1106 (Pa. Super. 2020); Pa.R.A.P. 1925(b)(3)(iv). Accordingly, we will limit our review to that assertion.

Appellant argues — based upon his own testimony — that he "was not present when the incident occurred." ***See*** Appellant's Brief at 45, 51, 53, 55, 57, 59. He insists his testimony was corroborated by the CRC interview with T.F., one of Rodriguez's children. ***Id.*** at 46, 51, 53, 56, 58, 60. According to Appellant, during the interview, T.F. confirmed Appellant was "never at the apartment when the incident occurred." ***See id.*** at 46, 51, 53, 56, 58, 60.

We conclude Appellant is entitled to no relief. Rodriguez unequivocally testified at trial that Appellant assaulted her during the early morning hours of September 9, 2017. ***See*** N.T., 10/21/19, at 50, 77. Her testimony was

corroborated by Officer Gallop, who stated that Rodriguez identified Appellant as her attacker while being treated at the hospital on the night of the incident. *See id.* at 118. Although Appellant denied any involvement in the assault, the jury was free to disregard his testimony as not credible. *See Miller*, 172 A.3d at 640. Furthermore, we reiterate that "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense[.]" *Johnson*, 180 A.3d 474 at 481.

Here, Appellant's argument focuses on the weight of the evidence supporting the verdict, not the sufficiency. *See Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness's testimony 'goes to the weight of the evidence, not the sufficiency of the evidence.'"). Although Appellant challenged the weight of the evidence in his post-sentence motion, he did not include in his Rule 1925(b) statement nor on appeal. *See* Appellant's Post Sentence Motion, 2/6/20, at 4-7 (unpaginated); Appellant's Concise Statement of Matter Complained of on Appeal Pursuant to Rule 1925(b), 5/12/20; *Bonnett*, 239 A.3d at 1106 (issues not raised in Rule 1925(b) statement are waived).

Because we conclude Appellant is entitled to no relief on the issues raised on appeal, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>01/05/2021</u>