J-A17020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NASEEMA SAMI | : | |
| | : | |
| Appellant | : | No. 86 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 5, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003563-2019

BEFORE: PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED NOVEMBER 21, 2022**

Appellant Naseema Sami appeals from the judgment of sentence imposed after she was found guilty but mentally ill[1] of first-degree murder and related offenses. Appellant argues that the trial court erred in admitting expert testimony without conducting a **Frye**[2] hearing, claims that the Commonwealth's expert lacked any factual basis for his opinion, and challenges the weight of the evidence. We affirm.

The trial court summarized the underlying facts of this matter as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that a finding of "guilty but mentally ill" is the equivalent of a traditional guilty verdict. **See Commonwealth v. Sohmer**, 546 A.2d 601, 607 (Pa. 1988) (explaining that "the only effect of a verdict of guilty but mentally ill is to trigger an inquiry at the time of sentencing to determine the defendant's mental status at the time of the sentencing phase").

[2] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

Appellant's convictions arose out of the death of two elderly victims, Lila Frost and Lorraine Gigliello, on March 7, 2019. On that date, acting under acute delusions and an associated intense sense of fear, Appellant along with her six-year-old son, went to the residence of her former landlord, Ms. Frost, located at 10 West Indian Lane, West Norriton, Montgomery County. She entered Ms. Frost's residence through an unlocked door, and no one was home. A short time later, Ms. Frost's best friend, Ms. Gigliello, came by and encountered Appellant there. Ms. Gigliello recognized Appellant as having been a former tenant, but at some point Ms. Gigliello attempted to call police. Appellant knocked the phone from her and a physical fight ensued. Ms. Frost came home and attempted to break up the fight, but Appellant also attacked Ms. Frost. Both victims suffered fatal injuries and died.

Appellant remained on the scene and cleaned up much of the blood there. In the ensuing days, Appellant sent several texts messages using Ms. Frost's phone, to give the illusion that Ms. Frost was still alive. She also sent several texts to her ex-husband and to her son's school, to explain his absence. On March 10, 2019, police were alerted by a request for a welfare check on Ms. Frost. After gaining entry into the home, Appellant was discovered under the bed with her son, and the two dead bodies were located in the residence. Appellant was arrested at the scene.

Trial Ct. Op., 3/14/22, at 1-2.

Appellant was subsequently charged with two counts each of first-degree murder and third-degree murder, and one count each of criminal trespass, endangering the welfare of a child, possession of an instrument of crime, and tampering with evidence.[3] Prior to trial, Appellant filed a notice of insanity defense and a report prepared by defense expert Dr. David DeMatteo, who concluded that Appellant satisfied the diagnostic criteria for Delusional Disorder. *See* DeMatteo Expert Report at 25. Dr. DeMatteo also stated that

---

[3] 18 Pa.C.S. § 2502(a), 2502(c), 3503(a)(1)(i), 4304(a)(1), 907(a), and 4910(1), respectively.

Appellant had been experiencing delusional beliefs and intense paranoia at the time of the instant offenses such that "her ability to understand the nature/wrongfulness of her actions was significantly compromised due to her severe mental illness." *Id.* at 25.

The Commonwealth's expert, Dr. John O'Brien, submitted a report in which he offered the following opinion:

> It is my opinion that the most appropriate diagnosis for [Appellant's] array of symptoms at the time of the offense and preceding it is Substance Intoxication/Substance Induced Psychotic Disorder. It is my opinion that those symptoms were the result of voluntary intoxication utilizing marijuana and very possibly other drugs.
>
> Regardless of how one diagnoses [Appellant], it is clear to me that at the time of the offense, she was able to appreciate the nature and quality of her acts in connection with the physical altercations that she had on March 7, 2019 with Lorraine Gigliello and Lila Frost which resulted in their deaths. My evaluation of [Appellant] indicates that throughout the period of time that she was symptomatic she maintained sensitivity to and awareness of potential illegal or wrongful behaviors. It is my opinion that at the time of the offense she was able to appreciate the wrongfulness of her acts under generally accepted societal standards, even if she felt justified in killing Ms. Gigliello and Ms. Frost in self-defense arising out of their behavior toward her and the paranoid symptoms she was experiencing during that period of time. While [Appellant's] ability to conform her conduct to the requirements of the law may have been compromised at the time of the offense, it is my opinion that it was compromised by her voluntary use of drugs.
>
> All the aforementioned opinions are rendered to a reasonable degree of medical and psychiatric certainty.

O'Brien Expert Report at 25.

Appellant subsequently filed a motion *in limine* seeking to exclude any reference to drugs other than marijuana, claiming that there was no evidence that she had used cocaine or methamphetamine at or near the time of the murders. Appellant's Pre-Trial Mot. *in Limine*, 11/24/19, at 15. Appellant also asked the trial court to exclude any reference to the marijuana as the cause of the incident and requested a **Frye** hearing to determine whether it was scientifically accepted that marijuana can cause extreme violence. ***Id.*** at 18.

The Commonwealth also filed a pre-trial motion seeking to admit evidence concerning Appellant's drug use. Commonwealth's Pre-Trial Mot., 12/13/19, at 14. Specifically, the Commonwealth sought to admit the drug paraphernalia found in Appellant's home and statements from family members about Appellant's prior drug use, including marijuana, methamphetamines, and cocaine. ***Id.*** at 17-20.

On January 3, 2020, the trial court entered an order stating that the Commonwealth was prohibited from "questioning, referencing, arguing or eliciting testimony or presenting evidence regarding any drug possession or use by defendant other than marijuana." Trial Ct. Order, 1/3/20, at 1-4. The court also ruled that Dr. O'Brien was prohibited "from referencing or testifying at trial about any other drugs or drug paraphernalia besides marijuana." ***Id.*** at 5. The Commonwealth subsequently filed an interlocutory appeal, and this Court affirmed the trial court's ruling. ***See Commonwealth v. Sami***, 243 A.3d 991, 1000-01 (Pa. Super. 2020) (concluding that the trial court properly denied the Commonwealth's request to introduce evidence or expert

testimony suggesting that Appellant "possessed and used drugs other than marijuana").

The trial court conducted a pre-trial motions hearing on May 5, 2021. At that time, the Commonwealth argued that the evidence concerning Appellant's past marijuana use was admissible to establish intent under Pa.R.E. 404(b). *See* N.T. Mot. Hr'g, 5/5/21, 7-14. The Commonwealth also asserted that the marijuana evidence would provide the factual basis for Dr. O'Brien's expert opinion regarding Appellant's diagnosis. *Id.* at 13. In response, Appellant argued that there was no causal connection between Appellant's previous marijuana use and the facts of the underlying crime. *See id.* at 14-24. Ultimately, on May 10, 2021, the trial court issued an order granting the Commonwealth's motion to admit evidence concerning Appellant's marijuana use. *See* Trial Ct. Order, 5/10/21, at 1. Specifically, the trial court explained: "There is a factual nexus to support admitting the marijuana evidence. The marijuana evidence is relevant, and not too remote in time from the date of the crime. Additionally, the marijuana evidence is not speculative." *Id.*

The matter proceeded to a non-jury trial on November 1, 2021. At trial, the Commonwealth presented testimony from police officers who investigated the murders and took Appellant's statement following her arrest. The Commonwealth also introduced Appellant's statement to police, which included a detailed account of the murders.

The trial court summarized the evidence relating to Appellant's mental state as follows:

Ibraheem Choudhry, Appellant's brother, testified that prior to the murders, he observed that Appellant had acted strangely, such as asking him to remove tracking devices from vehicles, because she believed that someone from the government had been following her. On February 23, 2019, Appellant alleged that their mother had inappropriately touched her son, N.S. Ibraheem called his friend, Sergeant Roche, and they entered a ChildLine complaint to have the allegation investigated.

Officer Nicholas Campitelli of the East Coventry Township Police Department in Chester County, received the ChildLine referral involving N.S. On March 1, 2019, Officer Campitelli contacted Appellant, and scheduled a forensic interview for N.S. on March 7, 2019 at 1:00 p.m. The officer attempted to contact Appellant several times to confirm the meeting, but he never received a response until March 7, 2019 at about 8:00 a.m. In that phone conversation, Appellant told Officer Campitelli that she was feeling overwhelmed. The officer described her as sounding nervous and upset. When he asked if he could help, Appellant hung up.

At around 9:00 or 10:00 a.m., Officer Campitelli called Ibraheem. The officer relayed to Ibraheem that he spoke to his sister, and that she said she didn't feel safe, and that she didn't know anywhere to go to be safe. This prompted Ibraheem to call his sister, and he arranged to meet her at his work, in the parking lot. Ibraheem testified that Appellant seemed nervous, and that she thought someone from the government was following her. At some point Appellant got back into her car, said she was going to their parents' house, and drove away at a high rate of speed. Appellant never did go to their parents' house. Ibraheem spoke again to Officer Campitelli, and told him that Appellant was acting erratically, and driving carelessly with her son in the car. Ibraheem was concerned with Appellant's and N.S.'s wellbeing, so he and Officer Campitelli tried to arrange mental health help that day, but none of these attempts were successful.

Ibraheem testified that he knows his sister has used marijuana in the past. On March 12, 2019, two days after her arrest, he went to her residence to get a few things for N.S., and while there he saw marijuana paraphernalia. Appellant's ex-husband, Nathan

Skacel, also testified at trial that he knew Appellant to be a marijuana user while they were married, but could not testify as to her marijuana usage after their divorce in 2016. He also observed the marijuana paraphernalia at Appellant's residence on March 12, 2019, when he went there with Ibraheem.

After the Commonwealth rested, Appellant took the stand and testified in her own defense. Appellant admitted to being an occasional marijuana user in 2019, although she denied using it on March 7, 2019. On cross-examination, Appellant didn't remember the last date of her marijuana use, but stated that it was probably the last time she had her menstrual cycle.

In support of her insanity defense, defense expert, Dr. David DeMatteo, an expert in the field of forensic psychology, testified. Dr. DeMatteo opined that Appellant suffered from delusional disorder, persecutory type with bizarre content. He further explained that there's a variant of delusional disorder described in the literature, Capgras syndrome, which is the belief that people they know have been replaced by imposters, such as clones or biological twins. It was Dr. DeMatteo's opinion that marijuana use could not explain Appellant's behavior. He concluded that although Appellant understood the quality of her actions, *i.e.*, that punching and kicking could result in sever[e] injury or death, she did not understand the nature of her actions were wrong. Rather, she believed that she was in danger, that her son was in danger, that these individuals were replaced by clones, and that killing the victims was morally right and justified.

On cross-examination, Dr. DeMatteo acknowledged that Appellant had never been treated for mental illness before the murders, but for a bout of depression after a break-up 15 years prior for which she took an antidepressant. In addition, since the time of the murders and her arrest, Appellant had not been treated for mental illness. Dr. DeMatteo concluded in his report that Appellant's ability to understand the nature/wrongfulness of her actions was "significantly compromised," due to her severe mental illness.

The Commonwealth presented Dr. John S. O'Brien, as a rebuttal witness, and was accepted as an expert in forensic psychiatry. O'Brien diagnosed Appellant with suffering from a substance induced psychosis or paranoia at the time of murders. He explained the underpinnings of his diagnosis included Appellant's description of having never been more terrified in her life during that period of time immediately preceding the offense. The doctor

opined that at the time of the murders, Appellant was acutely and severely symptomatic. Also crucial to his diagnosis was that after Appellant's arrest and entry into custody, the acute episode proved to be very transitory. He explained that the episode started out intensely with acute symptoms that resolved without any intervention, and that Appellant was able to be calm, cooperative, and interactively appropriate with the police, who she previously was fearful of as imposters, when she gave them a statement on March 10, 2019. Dr. O'Brien opined that this is a typical pattern of situations involving drug use and drug induced psychosis or paranoia; that the person gets acutely paranoid and then the paranoia abates. Dr. O'Brien pointed to her correctional records, which demonstrated that without any treatment there was a prolonged period of time of absolutely no symptoms reported or demonstrated. This fact is consistent for someone who has exhibited symptoms related to drug use, once the person is no longer using and the drug washes out of his/her system, the person becomes asymptomatic or significantly less symptomatic. Dr. O'Brien stated that substance induced psychotic disorder contemplates that a person can by symptomatic from the use of an affecting agent, for up to 30 days. Dr. O'Brien summed up the rationale for his opinion, namely the transitory nature of the symptoms, plus the acuity, is highly suggestive of a substance induced psychotic disorder.

Dr. O'Brien further opined that Appellant was aware of the wrongfulness of her acts. He noted that after the murders she cleaned up the apartment, and she covered the bodies. Then while she remained at the scene, she authored texts that kept people away. She also created an alibi for her son's absence, telling her son's school and ex-husband, that they were going to Disney World, trying to present a situation where [there] was no cause for alarm.

Following Dr. O'Brien's testimony, the defense presented the sur-rebuttal testimony of Gary Lage, Ph.D., an expert in the field of toxicology. Dr. Lage testified that marijuana induced psychosis is rare, and primarily occurs in young adolescents, from marijuana with high concentrations of THC, or from synthetic marijuana. He also believed that there was no support for Dr. O'Brien's determination that Appellant suffered from substance induced psychosis. It was Dr. Lage's opinion that Dr. O'Brien's statement that effects of marijuana can last for 30 days is not supported by the scientific literature.

Trial Ct. Op. at 12-17 (citations and footnotes omitted).

On November 5, 2021, Appellant was convicted of all charges. That same day, the trial court sentenced Appellant to aggregate term of life imprisonment without the possibility of parole. Appellant filed a timely post-sentence motion, which the trial court denied.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's evidentiary claims but concluding that Appellant waived her challenge to the weight of the evidence.[4]

On appeal, Appellant raises the following issues for review:

1. Did the [trial] court err in denying [A]ppellant's request for a *Frye* hearing requiring the Commonwealth to establish a scientific basis for Dr. John O'Brien's conclusion that the killings in question were the result of marijuana-induced psychosis when no evidence existed that [Appellant] was under the influence of marijuana at or near the time of the offense and

---

[4] In her post-sentence motion, Appellant argued that the verdict was against the weight of the evidence because it "was not consistent with guilty but mentally ill, and instead was consistent with not guilty by reason of insanity." Appellant's Post-Sentence Mot., 11/15/21, at 6. In her Rule 1925(b) statement, Appellant challenged the weight of the evidence based on her claim that Dr. O'Brien's diagnosis of "marijuana-induced psychosis had no factual basis in the record and, moreover, was refuted by the uncontradicted testimony of defense toxicology expert Gary Lage . . . ." *See* Rule 1925(b) Statement, 1/24/22, at 1-2.

In concluding that Appellant waived her weight claim, the trial court explained that Appellant's Rule 1925(b) statement provided "an entirely different theory as to why the weight of the evidence does not support the verdict, and as such the issue raised on appeal was not properly preserved and this new theory cannot be raised for the first time on appeal." Trial Ct. Op. at 36 (citing Pa.R.A.P. 302(a)).

no generally accepted scientific consensus exists establishing that marijuana use over a week before the killing could cause marijuana-induced psychosis at the time of the event?

2. Did the [trial] court err in admitting the testimony of Dr. John O'Brien where no factual basis existed for his conclusion that [Appellant] was operating under the influence of marijuana at the time of the killing?

3. Was the [trial] court's verdict against the weight of the evidence where the evidence established that [A]ppellant was incapable of knowing the nature and quality of her actions or that her actions were wrong and the conclusion of the Commonwealth's psychiatric expert that [A]ppellant was under the influence of marijuana which resulted in a marijuana-induced psychosis had no factual basis in the record and, moreover, was refuted by the uncontradicted testimony of defense toxicology expert Gary Lage that the impact of marijuana lasts only 3 to 4 hours with some residual effects up to 24 hours in rare instances and that marijuana-induced psychosis is extremely rare and usually occurs in younger people under the influence of extremely high levels of THC?

Appellant's Brief at 3-4.

### *Frye* **Hearing**

In her first issue, Appellant argues that the trial court erred by denying her request for a *Frye* hearing concerning Dr. O'Brien's expert opinion on marijuana-induced psychosis. *Id.* at 22. In support, Appellant notes that there was "uncontradicted testimony [from] defense toxicologist Gary Lage [who stated] that [] marijuana-induced psychosis occurs only in younger users or with exposure to extremely high doses of THC." *Id.* at 29. Although Dr. O'Brien testified that marijuana "could trigger a psychotic episode lasting over [thirty] days," Appellant argues that there was no evidence that she "had used marijuana within [thirty] days of the killings or, more importantly, that she

- 10 -

had ingested marijuana in a dose that would have raised her THC levels to an amount capable of causing marijuana-induced psychosis." *Id.* at 29-30. Therefore, Appellant contends that Dr. O'Brien's opinion relied on "the exact sort of speculative methodology that the Pennsylvania Supreme Court and this Honorable Court have indicated should be rejected by a trial court pursuant to [*Frye*] . . ." *Id.* at 30.

"When reviewing a trial court's grant or denial of a *Frye* motion, an abuse of discretion standard applies." *Walsh v. BASF Corp.*, 234 A.3d 446, 456 (Pa. 2020) (citation omitted).

Rule 702 of the Pennsylvania Rules of Evidence sets forth the following guidelines for scientific evidence and expert opinions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Further, this Court has explained:

> The proponent of expert scientific evidence bears the burden of establishing all of the elements for its admission under Pa.R.E. 702, which includes showing that the rule in [*Frye*] is satisfied. *See* [*Grady v. Frito-Lay*, Inc., 839 A.2d 1038, 1045 (Pa. 2003)]. *Frye*, which is now embodied in Pa.R.E. 702(c), instructs that the

- 11 -

court should not admit scientific evidence during trial unless the underlying methodology has gained general acceptance in the scientific community. *See Commonwealth v. Topa*, 369 A.2d 1277, 1281-82 (Pa. 1977). "*Frye* does not apply to every time science enters the courtroom . . . *Frye* does apply, however, where an expert witness employs a novel scientific methodology in reaching his or her conclusion." *Folger ex rel. Folger v. Dugan*, 876 A.2d 1049, 1058 (Pa. Super. 2005) (*en banc*) (citations omitted). One method to assess a *Frye* motion is to conduct a *Frye* hearing, although a hearing is not mandatory.

*Buttaccio v. American Premier Underwriters, Inc.*, 175 A.3d 311, 315 (Pa. Super. 2017) (some citations omitted).

A *Frye* hearing is warranted only where the trial court has articulable grounds to believe an expert witness has not applied accepted scientific methodology. *See Commonwealth v. Bonnett*, 239 A.3d 1096, 1102 (Pa. Super. 2020), *appeal denied*, 250 A.3d 468 (Pa. 2021). The opposing party must demonstrate that the testimony is based on novel scientific evidence and that a legitimate dispute regarding the reliability of the conclusions exists. *Id.*

Finally, our Supreme Court has explained:

[T]rial courts may not question the merits of the expert's scientific theories, techniques or conclusions, and it is no part of the trial court's function to assess whether it considers those theories, techniques and/or conclusions to be accurate or reliable based upon the available facts and data. As is plainly set forth in Rule 702(c), the trial court's role is strictly limited to determining whether "the expert's methodology is generally accepted in the relevant field." Pa.R.E. 702(c). The trial court may consider only whether the expert applied methodologies generally accepted in the relevant field, and may not go further to attempt to determine whether it agrees with the expert's application of those methodologies or whether the expert's conclusions have sufficient factual support. Those are questions for the jury to decide.

*Walsh*, 234 A.3d at 458 (footnote omitted).

- 12 -

Here, the trial court addressed Appellant's claim as follows:

In this case, Dr. O'Brien testified at trial that at the time of the murders Appellant was suffering from substance induced psychosis or paranoia. N.T. Trial, 11/4/21, at 151. He explained the underpinnings of his opinion include: the description by her of having never been more terrified in her life during that period of time immediately preceding the offense, and she was "acutely, acutely symptomatic and severely symptomatic;" and that the acute episode was very transitory, according to the evidence in the case and from her correctional records after arrest and entry into custody. *Id.* at 151. Therefore, [it was] his opinion that the transitory nature, and the acuity, is consistent with a substance induced psychotic disorder. *Id.* at 157. Dr. O'Brien opined that "substance induced psychotic disorder contemplates that a person can be symptomatic from the use of an affecting agent, a drug or whatever, for up to 30 days." *Id.* at 155.

In reaching his opinion, Dr. O'Brien relied on conventional scientific methods. He completed a psychiatric evaluation of Appellant. He interviewed her and conducted a mental status examination upon her. He further reviewed materials forwarded to him in connection with this case, including: various police incident reports from 2007, 2011, and 2019; investigative materials from the Montgomery County Detective Bureau and West Norriton Police Department which included statements to police by Appellant, [Appellant's minor son], various family members, and included Ms. Frost's and Appellant's cellular phone records; the autopsies; criminal complaint and affidavit of probable cause; records regarding Appellant from the Montgomery County Correctional Facility from March 11, 2019 through November 1, 2019; and the defense report by Dr. DeMatteo.

Appellant failed to [make] a showing that Dr. O'Brien's expert testimony was based upon novel science. In fact, Dr. O'Brien's diagnosis of drug induced psychosis is in fact a well-accepted and recognized condition as set forth in the DSM-5. *See* Exhibit "C-57," at 25. In his report and in his testimony at trial he thoroughly explained his process of diagnosis and of his evaluation of Appellant. He further explained his rationale in support of his diagnosis. None of his methodology relied on novel science. Further, on cross-examination, [Appellant's] counsel specifically questioned Dr. O'Brien about his opinion regarding how long

- 13 -

marijuana lasts in someone's system.  It was left to the trier of fact, to weigh Dr. O'Brien's answer to that question.  Accordingly, a ***Frye*** hearing was properly denied.

Trial Ct. Op. at 25-26 (some citations and footnotes omitted, some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's request for a ***Frye*** hearing.  ***See Walsh***, 234 A.3d at 456; ***Buttaccio***, 175 A.3d at 315.  As noted by the trial court, Appellant failed to establish that Dr. O'Brien's expert opinion was based on novel scientific evidence.  ***See Bonnett***, 239 A.3d at 1102.  Therefore, because the trial court did not have "articulable grounds" to believe that Dr. O'Brien failed to apply an accepted scientific methodology in a conventional fashion, the trial court correctly concluded that a ***Frye*** hearing was unwarranted.  ***See id.***  Accordingly, Appellant is not entitled to relief.

**Factual Basis for Dr. O'Brien's Testimony**

Appellant also claims that there was no factual basis for Dr. O'Brien's opinion that Appellant had been "operating under the influence of a marijuana-induced psychosis at the time of the killings."  Appellant's Brief at 33.  In support, Appellant asserts that "no marijuana was recovered from [Appellant's] person, at the crime scene, or in her vehicle and [Appellant] did not appear to be under the influence of a controlled substance when questioned by police."  ***Id.*** at 34.  Further, Appellant contends that the only evidence supporting Dr. O'Brien's opinion was "the presence of marijuana paraphernalia in her bedroom that tested positive for THC and statements

from [Appellant's] family and ex-husband that she was an occasional marijuana user." *Id.* Therefore, Appellant concludes that Dr. O'Brien's testimony had no factual basis and she is entitled to a new trial.

When reviewing evidentiary claims, our standard of review is as follows:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted), *appeal denied*, 244 A.3d 1222 (Pa. 2021).

Rule 703 of the Pennsylvania Rules of Evidence provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

It is well settled that "[e]xpert testimony is incompetent if it lacks an adequate basis in fact." *Helpin v. Trustees of the Univ. of Pennsylvania*, 969 A.2d 601, 617 (Pa. Super. 2009) (citation omitted). As such, an expert's testimony must be "based on more than mere personal belief," and "must be

supported by reference to facts, testimony or empirical data." ***Snizavich v.***

***Rohm & Haas Co.***, 83 A.3d 191, 195 (Pa. Super. 2013) (citations omitted).

Further, our Supreme Court has explained:

An expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture. . . . To endow opinion evidence with probative value it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion. The opinion must be an intelligent and reasonable conclusion, based on a given state of facts, and be such as reason and experience have shown to be a probable resulting consequence of the facts proved. The basis of the conclusion cannot be deduced or inferred from the conclusion itself. In other words, the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion.

***City of Philadelphia v. W.C.A.B.*** (***Kriebel***), 29 A.3d 762, 770 (Pa. 2011)

(citation omitted).

Here, the trial court addressed the factual basis for Dr. O'Brien's opinion

as follows:

Dr. O'Brien did not testify that Appellant was operating under the influence of marijuana at the time of the murders. Rather, he stated that her prior marijuana ingestion triggered a drug-induced psychosis, which in turn led to the paranoia causing Appellant to fear for her safety leading to the murders. Therefore, the question is whether there was a sufficient factual foundation for Dr. O'Brien's opinion that she suffered from drug-induced psychosis.

\* \* \*

At trial, Appellant's brother, Ibraheem Choudhry testified that he knew her to be a marijuana user in the past. On March 12, 2019, after his sister's arrest, he went to her residence in Folsom, Delaware County, with her ex-husband, Nate Skacel. They went there to pick up clothes, toys, and toiletries for her son. While there he observed marijuana paraphernalia.

- 16 -

In addition, Mr. Skacel testified that while they were married he knew her to be a marijuana user. He also observed the marijuana paraphernalia on March 12, 2019, at her residence.

Appellant in her testimony admitted to occasional marijuana use, but denied using it on March 7, 2019. On cross-examination, Appellant didn't remember the last date of her marijuana use, but stated that it was probably the last time she had her menstrual cycle.

It's not dispositive of this issue that Appellant was not found with marijuana on her person or in her car at the time of her arrest, or that she was not under the influence of marijuana three days after the murders on March 10, 2019, when she provided a statement to police. The fact that marijuana paraphernalia was found to be in her home two days after her arrest, is relevant and makes more probable that her delusional behavior might have been brought on by psychosis caused by marijuana use. It could be inferred from the marijuana evidence that Appellant had been currently using it at the time of the murders. Importantly, Dr. O'Brien testified that marijuana can cause psychosis up to 30 days after it was ingested. He stated that "substance induced psychotic disorder contemplates that a person can be symptomatic from the use of an affecting agent, a drug or whatever, for up to 30 days." The fact that Appellant was not currently under the influence at the time of her arrest, or that marijuana was not found on her person or in her car, several days after the murders, is not the end of the psychiatric analysis.

Trial Ct. Op. at 27, 33-35 (citations omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See LeClair*, 236 A.3d at 78. The record reflects that Dr. O'Brien's opinion was based on testimony about Appellant's history of marijuana use, his own observations of Appellant during the forensic interview, and his own expertise in distinguishing between mental disorders and drug-induced psychosis. Therefore, we agree with the trial court that

there was a sufficient factual basis for Dr. O'Brien's opinion. **See Kriebel**, 29 A.3d at 770. Accordingly, Appellant is not entitled to relief.

## Weight of the Evidence

In her final claim, Appellant claims that the verdict of guilty but mentally ill "shock[ed] the [conscience] since the evidence was far more consistent with legal insanity, *i.e.*, that [Appellant] was incapable of knowing [the] nature and quality of her actions." Appellant's Brief at 36. In support, Appellant argues that there were "glaring inconsistencies" between Dr. O'Brien's conclusion about drug-induced psychosis and the testimony provided by other witnesses. *Id.* at 38. Therefore, Appellant concludes that she is entitled to a new trial. *Id.*

> In reviewing a weight claim, our Supreme Court has explained:
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest

unreasonableness, or misapplication of law." ***Commonwealth v. Kane***, 10 A.3d 327, 333 (Pa. Super. 2010) (citation omitted).

Here, as noted previously, the trial court concluded that Appellant waived her challenge to the weight of the evidence. ***See*** Trial Ct. Op. at 36. In any event, the trial court concluded that even if Appellant properly preserved this issue, she would not be entitled to relief. ***Id.*** Specifically, the trial court explained: "This [c]ourt sat as the fact-finder and credited the testimony of Dr. O'Brien in that at the time of the murders Appellant suffered from marijuana-induced psychosis, and that she understood the nature of her actions were wrong. Accordingly, this weight claim should be rejected." ***Id.*** at 37.

Based on our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim. ***See Clay***, 64 A.3d at 1055. The trial court credited Dr. O'Brien's testimony that Appellant was suffering from marijuana-induced psychosis at the time of the murders. ***See*** Trial Ct. Op. at 37. Although Appellant disagrees with the trial court's credibility determination, "[i]t is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder." ***Commonwealth v. Izurieta***, 171 A.3d 803, 806 (Pa. Super. 2017) (citations omitted); ***see also Commonwealth v. Flor***, 998 A.2d 606, 626 (Pa. 2010) (emphasizing that "credibility determinations rest solely within the purview of the fact-finder" (citations omitted)). Therefore, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/21/2022</u>