2020 PA Super 231

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PRESTON DAQUEN BONNETT | : | |
| | : | |
| Appellant | : | No. 1826 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 5, 2019
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0004301-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PRESTON DAQUEN BONNETT | : | |
| | : | |
| Appellant | : | No. 1827 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 5, 2019
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0004302-2017

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:

In these consolidated appeals,[1] Appellant Preston Daquen Bonnett

appeals from the judgment of sentence entered in the Court of Common Pleas

of Luzerne County on June 5, 2019, following his convictions of three counts

_____

[*] Former Justice specially assigned to the Superior Court.
[1] In our *Per Curiam* Order entered on December 16, 2019, this Court
consolidated the appeals *sua sponte*. **See** Pa.R.A.P. 513.

each of Second Degree Murder, Third Degree Murder and Arson on two separate informations.[2]

The learned trial court, The Honorable Michael T. Vough, provided a detailed summary of the facts and procedural history of Appellant's two underlying cases as follows:

> This matter arises from two informations filed by the Luzerne County District Attorney against [Appellant] on January 3, 2018. Information number 4301 charged [Appellant] with one count of criminal homicide. Information number 4302 charged [Appellant] with two counts of criminal homicide and three counts of arson endangering persons. These charges resulted from the deaths of three children in an intentionally set fire which occurred at their home on October 25, 2017.
>
> At approximately 7:08 p.m. on October 25, 2017, the Luzerne County Communications Center received a 911 call from Erik Dupree regarding an individual on the back porch of the residence located at 60 Oakwood Drive, Laflin Borough, Luzerne County, Pennsylvania. Erik Dupree was sixteen years old and resided at 60 Oakwood Drive with his mother, Susan Major, and younger brothers, Devon Major and Ezekial Major. The individual on the back porch was [Appellant] and he was not permitted at the residence. Four minutes later, the Luzerne County Communication Center received a 911 call from a neighbor reporting that the back of the property located at 60 Oakwood Drive was on fire. Erik Dupree, Devon Major and Ezekial Major were home at the time of the fire and all three died as a result thereof.
>
> During the course of their investigation, the Pennsylvania State Police learned that [Appellant] had been in a relationship with Susan Major. They also learned that [Appellant] had equipment which allowed him to make fraudulent credit cards and he conspired with Susan Major to use the fraudulent cards. This activity eventually led to their arrest after a fraudulent card was used at a Turkey Hill.
>
> Following the incident at Turkey Hill, [Appellant] continued to contact Susan Major and moved into the basement of her

---

[2] 18 Pa.C.S.A. §§ 2502 (b), (c) and 3301(a)(11), respectively.

residence along with a woman named Tyla Griffin. After two days, Susan Major told [Appellant] and Tyla Griffin to leave the house. Although [Appellant] and Ms. Griffin vacated the residence, they left the credit card making equipment inside along with other items that Susan Major retained. The credit card making equipment was turned over to police.

Even after leaving 60 Oakwood Drive, [Appellant] continued his attempts to contact Susan Major. Sometime in October, 2017, Susan Major found three pictures taped to her home which depicted her performing a sex act on [Appellant]. All of the pictures contained a note advising Susan Major to text a designated phone number or the individual who left the pictures would be back. Tyla Griffin identified the phone number and writing on the pictures to be [Appellant's].

Because Susan Major and her children were afraid of [Appellant], she obtained cameras contained in Minion figurines from the movie Despicable Me. These cameras were placed at the front of her house as well as the rear near the back porch. The cameras had the capability to record and Erik Dupree was able to see in front and behind his house by using his cell phone which was connected to the cameras.

Prior to October 25, 2017, [Appellant] stated to Tyla Griffin that he would burn Susan Major's house down. He made similar comments on several occasions even after Ms. Griffin reminded him that the children would be in the house. [Appellant] went so far as to say Susan Major can watch her kids burn.

On the evening of the fire, Erik Dupree looked at his phone and saw [Appellant] on the back porch of his residence. Erik Dupree called 911 and within four minutes 60 Oakwood Drive was reported to be on fire. He died in the fire along with his two brothers. The cause of death for Erik Dupree and Devon Major was carbon monoxide poisoning due to smoke inhalation from a house fire. The cause of death for Ezekiel Major was a combination of smoke inhalation and burns due to the house fire. Homicide was the manner of death for all three boys.

Immediately after the fire, [Appellant] was taken into custody on an outstanding warrant for access device fraud as well as to be interviewed in connection with the fire. During the interview [Appellant] denied having a cell phone or a vehicle. He also denied being at Susan Major's home at 7:00 p.m. on October 25, 2017. The state police subsequently determined that [Appellant] had a cell phone and drove a grayish-green Ford Taurus. He also admitted that he had been at Susan Major's residence on October 25, 2017.

A search warrant was executed on a room in which [Appellant] and Tyla Griffm were living in the City of Wilkes-Barre on October 26, 2017. A pair of jeans and a sweatshirt were recovered along with a cell phone.

Although the minion containing the camera from the back porch was never recovered, the video was obtained. An individual wearing the same sweatshirt and jeans seized during the search of [Appellant's] room could be seen on the video. This video depicted [Appellant] on the back porch as described by Erik Dupree in the 911 call.

[Appellant's] iPhone was examined by a member of the Pennsylvania State Police Computer Crime Unit. This examination revealed that the iPhone connected to a wireless router at 60 Oakwood Drive at 7:08 p.m. on October 25, 2017. Also located on the [Appellant's] iPhone was a photograph of the minion camera which was taken at 7:26 p.m. on October 25. The photograph also depicted a pair of jeans with the same unique ridge pattern as seen in the video and on the jeans taken from [Appellant's] room in Wilkes-Barre. The user account for the Minion camera came back to Erik Dupree.

The Commonwealth presented the testimony of a fire investigation expert employed by the Bureau of Alcohol, Tobacco and Firearms. A State Police Fire Marshal also testified as an expert. Both agreed that the fire was intentionally set and the area of origin was at the rear of the home near the back porch. Less than two weeks prior to the fire, Susan Major discovered a hole in a back window near the area of origin and a beer bottle inside the residence on the floor. Accidental and natural causes of the fire were ruled out as was a baseboard heater which [Appellant] alleged to have been the source of the fire.

An expert in electrical engineering and electrical causation of fires also testified as a witness for the Commonwealth. He inspected the baseboard heater and eliminated it as a potential cause of the fire. This expert also examined the home and determined that neither the electrical system, nor the electrical devices in the home, caused the fire.

Criminal complaints were filed against [Appellant] on October 30 and 31, 2017. [Appellant] maintained his innocence and proceeded to trial. Following a five day trial which concluded on June 4, 2019, the jury found [Appellant] guilty of three counts of second degree murder, three counts of third degree murder and three counts of arson endangering persons. On June 5, 2019, [Appellant] was sentenced to three consecutive mandatory terms of life imprisonment on the three counts of second degree murder,

ten to twenty years concurrent on the three counts of third degree murder and the three counts of arson endangering persons merged with second degree murder. On June 10, 2019, an order was issued which vacated the ten to twenty year sentence imposed on the three counts of third degree murder based upon merger and the law as set forth in Commonwealth v. McCamey, 154 A.3d 352, 358 (Pa.Super. 2017).

[Appellant's] post-sentence motions were denied on October 9, 2019. A notice of appeal was then filed twenty-eight days later. After receiving [Appellant's] notice of appeal, an order was issued on November 8, 2019 which required that a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) be filed by [Appellant] within twenty-one days. A concise statement was filed on his behalf on December 2, 2019.

[Appellant's] concise statement raises weight and sufficiency claims for each charge. Error is also alleged in connection with the denial of [Appellant's] post-trial motions requesting a judgment notwithstanding the verdict, a new trial and a judgment of acquittal. Finally, Appellant alleges error by the court in denying his motion for change of venue and motion for a Frye[3] hearing.

Trial Court Opinion, filed 1/6/20, at 1-5 (unnumbered).

In his appellate brief, Appellant presents the following Statement of

Questions Involved:

> A. Whether the [c]ourt erred in Denying [Appellant's] Motion for a Frye Hearing challenging the admissibility of Trooper Karri Dodson testimony's [sic] as an expert witness?
>
> B. Whether there was insufficient evidence to sustain a verdict of guilty of each charge in each case?

---

[3] ***Frye v. United States***, 293 F. 1013 (D.C. Cir. 1923). Under ***Frye***, novel scientific evidence must be generally accepted in the relevant scientific community before it will be admitted. ***See Betz v. Pneumo Abex, LLC***, 615 Pa. 504, 44 A.3d 27, 30 (Pa. 2012). Pennsylvania Courts utilize the ***Frye*** test. ***See id.***

Brief for Appellant at 4.

Appellant first argues the trial court erred in failing to hold a ***Frye***[4] hearing prior to permitting State Fire Marshall Trooper Karri Dodson to testify as an expert witness in the field of fire investigation. Appellant's Brief at 34.[5] The Pennsylvania Supreme Court recently observed "[w]hen reviewing a trial court's grant or denial of a ***Frye*** motion, an abuse of discretion standard applies." ***Walsh Estate of Walsh v. BASF Corp.***, 2020 WL 4135151, at *6

_____

[4] Pennsylvania Rule of Evidence 702 governs the admissibility of scientific evidence. The Rule has been written to incorporate the standard set forth in ***Frye*** and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or otherwise specialized knowledge is beyond that possessed by the average layperson;
>
> (b)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or to determine a fact in issue; and
>
> (c)  the expert's methodology is generally accepted in the relevant field.

Pa.R.Crim.P. 702.

[5] Appellant also states that the trial court erred by allowing "by extension Agent [Robert Seth] Graybill to testify at trial." ***Id***. However, as we shall discuss in more detail, *infra*, Appellant has waived any argument as to the admissibility of Agent Graybill's testimony for his failure to raise such a claim in his concise statement of matters complained of on appeal. ***See Commonwealth v Lord***, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998).

(Pa. July 21, 2020) (citations omitted). Accordingly, we apply an abuse of discretion standard in our review of the trial court's denial of the Appellant's *Frye* motion. In proceeding with our *Frye* analysis, we are guided by the following:

> This Court has explained that scientific evidence is "novel" when "there is a legitimate dispute regarding the reliability of the expert's conclusions." ***Commonwealth v. Safka***, 95 A.3d 304, 307 (Pa. Super. 2014) (citation and quotation omitted). To be admissible at trial, the methodology underlying the novel scientific evidence "must have gained general acceptance in the relevant scientific community." ***Commonwealth v. Powell***, 171 A.3d 294, 307 (Pa. Super. 2017).
> A trial court is not required to conduct a *Frye* hearing any time a party seeks to introduce scientific evidence. "Rather, a hearing is warranted only when the trial court has articulable grounds to believe that an expert witness has not applied accepted scientific methodology in a conventional fashion in reaching his or her conclusions." [***Commonwealth v***.]***Jacoby***, 170 A.3d [1065,] 1091 [(Pa. 2017)]. A party opposing the scientific evidence must demonstrate that the expert's testimony is based on novel scientific evidence, *i.e.*, "that there is a legitimate dispute regarding the reliability of the expert's conclusions." ***Safka***, 95 A.3d at 307. "If the moving party has identified novel scientific evidence, then the proponent of the scientific evidence must show that the expert's methodology has general acceptance in the relevant scientific community despite the legitimate dispute." ***Id.*** (citation and quotation omitted). ***See also Jacoby***, 170 A.3d at 1091; ***Powell***, 171 A.3d at 307 (rejecting claim that Commonwealth, the proponent of expert testimony, had the initial burden and explaining that a defendant opposing such testimony had the burden of showing the testimony was based on novel scientific evidence in order to proceed to a *Frye* hearing).

***Commonwealth v. Cramer***, 195 A.3d 594, 606-07 (Pa.Super. 2018).

In the matter *sub judice*, Appellant asserts Trooper Dodson's analysis and subsequent trial testimony that the fire was incendiary did not comport with National Fire Protection Association Publication 921 ("NFPA 921"), the

scientific methodology deemed acceptable in the fire investigation community. Brief for Appellant at 37. [6] Appellant explains that under this methodology, an expert develops hypotheses through inductive reasoning and tests those hypotheses through deductive reasoning in an effort to select a final hypothesis. *Id*. at 36, 45. Appellant states Trooper Dodson assumed an incendiary cause after improperly ruling out accident as a cause and cites to what he claims to be numerous flaws and shortcomings in Trooper Dodson's analysis, despite her representation that she utilized a "scientific method." *Id*. at 37-45. Appellant concludes:

> [T]his is not an issue of whether she used a "novel" scientific method, but rather whether she applied the accepted scientific methodology set forth in 921 in a conventional fashion in reaching her conclusions. [Appellant] contends that she did not.

---

[6] The NFPA 921 is a guide for "scientific-based investigation and analysis of fire and explosion incidents ... [and] the foremost guide for rendering accurate opinions as to incident origin, cause, responsibility, and prevention." NFPA 921 covers "[a]ll aspects of fire and explosion investigation ... from basic methodology to collecting evidence to failure analysis. Guidelines apply to all types of incidents from residential fires and motor vehicle fires to management of complex investigations such as high-rise fires and industrial plant explosions." In addition NFPA 921's stated purpose is "to assist individuals who are charged with the responsibility of investigating and analyzing fire and explosion incidents and rendering opinions as to the origin, cause, responsibility, or prevention of such incidents, and the damage and injuries which arise from such incidents." *NFPA 921: Guide for Fire and Explosion Investigators, National Fire Protection Association*, http://www.nfpa.org/codes-and-standards/all-codes-and-standards/list-of-codes-and-standards?mode=code&code=921 (last visited Aug. 26, 2020).

[Appellant's] Motion for a *Frye* Hearing was in essence a motion in limine to exclude her testimony based upon **Frye, supra.**

On [sic] other words, she could **say** she used the methodology used in section 921, but that doesn't mean she actually did. In Commonwealth's logic, then, only if an expert says they [sic] used a "novel" methodology, is a party allowed to challenge the methodology used. In this case, Trooper Dodson claimed to use the methodology outlined in NFPA 921, but clearly she did not. This does not meet the point and rationale set forth in ***Frye*** and ***Grady*** [***v. Frito Lay, Inc***., 839 A.2d 1038 (Pa. 2003)] which is the [c]ourt is a gatekeeper to insure that conclusions reached by the experts is [are] within the methodology commonly accepted within the fire investigation community.

Cleary, Trooper Dodson did not use that methodology in any properly accepted fashion. Trooper Dodson jumped to the conclusion that [Appellant] was present at the scene at the time and near the point of origin, therefore, he must have started the fire. However, in no way was the fire investigated conducted properly using the scientific method. The conclusion of incendiary was based on assumption and not on science. Thus, [Appellant's] ***Frye*** motion should have been granted.

***Id***. at 47-48 (emphasis in original). [7]

_____

[7] In 2014, Randy Watson, NFPA Chairman, clarified the acceptability of the "process of elimination method" or "negative corpus" method stating:

That section [in Chapter 8] was titled "Inappropriate Use of the Process of Elimination." There was a lot of uproar because people didn't understand the section. They felt we were saying the process of elimination was a bad thing. That's not the case. What we were trying to communicate was that if you misuse the process of elimination, it could be bad. In the new edition, we added some introductory language to address that the process of elimination is an integral part of the scientific method. But if you're making a determination for which you have no evidence to support, that's not consistent with the scientific method. Whatever determination you're going to make in regards to the cause of fire, you have to have evidence to support it.

Prior to trial, the trial court heard argument on Appellant's previously-filed Motion for *Frye* Hearing. At that time, Appellant did not challenge Trooper Dodson's ability to testify as an expert, nor did he produce an expert to challenge her methodology. To the contrary, Appellant disputed that he bore the burden to show that she had applied a novel scientific method. ***See*** N.T., 5/17/19, at 2. Appellant reasoned, as he does in his appellate brief, that he bears no burden of proof. He argued Trooper Dodson improperly applied the NFPA 921 standard in reaching her conclusions, and that, if a trial court finds articulable grounds to believe an expert witness has not applied scientific methodology, a ***Frye*** hearing is warranted. ***Id***. at 4-6.

In response, the Commonwealth disagreed and explained that Appellant's arguments "contend that Trooper Dodson has committed an error in applying the science, not that it's a novel science. Committing errors in doing your testing is tantamount to good cross examination, as the Court noted, not a *Frye* hearing to prove that the science is still good." ***Id***. at 9-10.

Following argument, the learned trial court reached the following conclusion:

> Okay. In reviewing the filings and reviewing the arguments this morning, the [c]ourt does not see any novel science in this argument. I think, clearly, you're arguing a mistake in application of the science, which is clearly cross examination at trial.

---

http:// www .nfpa. org /news-and-research/publications/ nfpa-jourrnal/ 2014 march-april-2014/pov/perspectives (last visited 8/25/20).

So the [c]ourt is going to find that there hasn't been any novel science presented to the [c]ourt which warrants a *Frye* hearing. So the [c]ourt is going to dismiss your request for a *Frye* hearing.

Clearly, this is a cross examination issue in front of this jury for the expert when the expert testifies. You're alleging mistakes in the application of the science; you're not alleging mistakes or new novel science. So I think it's clearly cross examination for trial.

***Id***. at 13-14.

At trial, Appellant did not object to Trooper Dodson testifying as an expert in fire investigations. N.T., Commencing 5/29/19, at 532. Trooper Dodson testified she began her observations outside the home at 60 Oakwood Drive in a clockwise motion. ***Id***., at 538. She articulated what she found there and proceeded to detail her discoveries upon entering the structure. ***Id***. at 538-42. She studied all the evidence, including surveillance video and witness statements, from which she crafted a timeline of the events on the evening of October 25, 2017, which began when Appellant appeared on the home's surveillance camera, continued to Erik's 911 call, and ended when neighbors reported the fire. ***Id***. at 561-562. Based on the totality of this information, Trooper Dodson opined that an open flame had been introduced by a human hand to the curtains at the back of the home. ***Id***. at 563-64.

Defense counsel conducted a lengthy cross-examination of Trooper Dodson wherein he called into question the Trooper's approach to her investigation. Significantly, he made no specific mention of NFPA 921 in doing so, nor did he attempt to show either that it is the only authority governing an arson investigation or that Trooper Dodson had failed to investigate the

fire at 60 Oakwood Drive in compliance therewith. *Id*. at 568-619. Despite Appellant's statements to the contrary, Trooper Dodson explained that she began with several hypotheses and eliminated them accordingly. She stated she was "trained to have no expectation bias" and "gathered [her] data and made [her] full conclusion." *Id*. at 574, 592-93.

In *Walsh*, *supra*, the Pennsylvania Supreme Court declared the following:

> Whether we refer to the role of the trial court in a *Frye* contest as that of a "gatekeeper" is not consequential. What is of consequence is the role that the trial court plays during *Frye* proceedings. A careful review of our prior *Frye* decisions makes clear that it is the trial court's proper function to ensure that the expert has applied a generally accepted scientific methodology to reach his or her scientific conclusions. To fulfill this function, the trial court must be guided by scientists in the relevant field, including the experts retained by the parties in the case and any other evidence of general acceptance presented by the parties (e.g., textbooks). Conversely, trial courts may not question the merits of the expert's scientific theories, techniques or conclusions, and it is no part of the trial court's function to assess whether it considers those theories, techniques and/or conclusions to be accurate or reliable based upon the available facts and data. As is plainly set forth in Rule 702(c), the trial court's role is strictly limited to determining whether "the expert's methodology is generally accepted in the relevant field." Pa.R.E. 702(c). The trial court may consider only whether the expert applied methodologies generally accepted in the relevant field, and may not go further to attempt to determine whether it agrees with the expert's application of those methodologies or whether the expert's conclusions have sufficient factual support. Those are questions for the jury to decide.

*Id*. at *8 (footnote omitted).

Following a careful review of the certified record, we discern no abuse of discretion on the part of the trial court in rejecting Appellant's motion for a

*Frye* hearing. In requesting the hearing, Appellant essentially asked the court to usurp the jury's role to question the merits of Trooper Dodson's techniques and conclusions. *See*, *id*.

Importantly, Appellant failed to make an initial showing that Trooper Dodson's expert testimony was based on novel scientific evidence or in contravention to NFPA 921. Indeed, Trooper Dodson specifically testified that, in addition to possessing extensive firsthand experience in fire investigations, she had spent several days studying evidence in and around 60 Oakwood Drive ruling out possible causes of the fire before ultimately determining it had incendiary.

The certified record undercuts Appellant's allegations to the contrary and demonstrates that Trooper Dodson's expert testimony was not based on novel scientific evidence. For example, Appellant had the opportunity at trial to cross-examine her thoroughly as to any alleged error in her application of accepted techniques in fire investigation. As a result, the trial court did not have "articulable grounds" to believe that Trooper Dodson had failed to apply an accepted scientific methodology in a conventional fashion in reaching her conclusions. Thus, a *Frye* hearing was unwarranted, and the trial court properly rejected Appellant's request for such hearing. ***Commonwealth v. Cramer,*** 195 A.3d 594, 607 (Pa.Super. 2018).

Appellant next contends the Commonwealth presented insufficient evidence "to sustain a verdict of guilty of each charge in each case." Brief

for Appellant at 4.  In his Concise Statement of Errors Pursuant to Pa.R.C.P. 1925(b), Appellant similarly stated his intention to question on appeal "[w]hether the[re] was insufficient evidence to sustain a verdict of guilty of each charge in each case."  **See** [Appellant's] Concise Statement of Errors Pursuant to Pa.R.C.P. 1925(b), filed 12/2/19, at ¶7 (d)."

In its Opinion Pursuant to Rule 1925(a)(1), the trial court found Appellant had waived his challenge to the sufficiency of the evidence because his concise statement failed to specify the element(s) of the crimes(s) he intended to challenge on appeal.  Opinion Pursuant to Rule 1925(a)(1) at 7 (unnumbered).  In the alternative, the trial court found that even if Appellant properly had preserved this claim, it lacked merit.  **Id**. at 8-10 (unnumbered). Following our review, we conclude that Appellant's challenge to the sufficiency of the evidence is waived because his Rule 1925(b) statement did not adequately identify the errors that he intended to challenge on appeal.

It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). Further, an appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal. **See** Pa.R.A.P. 1925(b)(4)(ii) (requiring a Rule 1925(b) statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"). This Court

explained in **Riley v. Foley**, 783 A.2d 807, 813 (Pa.Super. 2001), that Pa.R.A.P. 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal.

A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal. **See Commonwealth v. Dowling**, 778 A.2d 683, 686-687 (Pa. Super. 2001) ("a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all").

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [ ] does not specify the allegedly unproven elements[,] ... the sufficiency issue is waived [on appeal].

**Commonwealth v. Tyack**, 128 A.3d 254, 260 (Pa.Super. 2015) (citation omitted). "Even if the trial court correctly guesses the issues Appellant[ ] raise[s] on appeal and writes an opinion pursuant to that supposition the issues are still waived." **Kanter v. Epstein**, 866 A.2d 394, 400 (Pa.Super. 2004) (citation omitted, *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied,* **Spector, Gadon & Rosen, P.C. v. Kanter**, 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006).

Herein, Appellant's Rule 1925(b) statement is a blanket statement wherein he declares the evidence was insufficient to convict him of all charges.

- 15 -

However, the statement fails to specify the element or elements upon which the evidence was allegedly insufficient to support Appellant's convictions of Second Degree Murder, First Degree Murder and Arson. This failure is especially significant herein, where the crimes were comprised of multiple elements and arose from two informations.

Thus, we conclude that Appellant's sufficiency of the evidence claim is waived on appeal. ***See Commonwealth v. Williams***, 959 A.2d 1252, 1257-1258 (Pa.Super. 2008).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2020