J-S22006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDUARDO AVILES | : | |
| | : | |
| Appellant | : | No. 1477 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 7, 2023
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0001930-2022

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:           **FILED: August 30, 2024**

Eduardo Aviles appeals from the judgment of sentence entered on August 7, 2023, in the Beaver County Court of Common Pleas, for his convictions of 15 counts of rape of a child, 15 counts of involuntary deviate sexual intercourse ("IDSI") with a child, two counts of unlawful contact with a minor, and two counts of corruption of minors.[1] Aviles challenges the sufficiency of the evidence and weight of the evidence to support the number of convictions of rape of a child and IDSI with a child. We affirm.

At the outset, we note with **extreme displeasure the Commonwealth's failure to file an appellee's brief**. "An appellee is required to file a brief that at minimum must contain a summary of argument

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 6318(a)(1), and 6301(a)(1)(ii), respectively.

and the complete argument for appellee." ***Commonwealth v. Pappas***, 845 A.2d 829, 835 (Pa. Super. 2004) (internal quotation marks and citation omitted). In ***Pappas***, the panel referred to the Commonwealth's failure to file a proper appellee's brief as "unacceptable." ***Id.*** We echo that opinion and remind the Commonwealth of its obligation to file an appellee's brief in future appeals. **It is entirely unacceptable that the Commonwealth did not file an advocate's brief in this case**.

The trial court thoroughly set forth the factual and procedural history of this case as follows:

> This case arises out of the sexual assault of two minor children, H.K. and L.A., by [Aviles]. [Aviles] was step-father to H.K. and biological father of L.A. H.K. began living with [Aviles] when her [m]other began a relationship with him and resided in the same dwelling from around age three (3) or four (4) until she reached the age of eight (8), at which point the abuse stopped. [During the time H.K lived with her mother and Aviles, her mother became pregnant with L.A.] L.A. began experiencing sexual abuse by [Aviles] at the age of three (3); the abuse did not stop until her mother stopped bringing her to visit [Aviles] that same year.
>
> ***
>
> Both minor victims, L.A. and H.K., provided testimony at trial. H.K. testified that she began living with [Aviles] in a mobile home (referred to as a camper throughout testimony) at the age of five. At the time, [Aviles] was in a relationship with H.K.'s mother. H.K. resided with [Aviles] for three to four years, until she was approximately eight years old, when her mother broke up with [Aviles].
>
> At the onset of the abuse of H.K., [Aviles] began showing H.K. pornographic videos depicting various sexual acts and would force her to engage in the conduct being depicted. When recalling the first instance of abuse, H.K. explained that [Aviles] showed her [a] pornographic film and directed her to "put my mouth on

his genitals," and that she kept doing that until "white stuff would come out … of his genitals." The following testimony was established during the Commonwealth's direct examination of H.K.:

Assistant District Attorney: Now, you mentioned videos at the beginning of this. Did he show you more than one video?

A: Yes.

Q: Did he tell you to do more than one thing?

A: Yes.

Q: What do you remember about other videos and other things he told you to do?

A: There were, like, videos for, like, the girl would, like, be on top of the guy's face and then, and then the girl would, like, put her mouth on his genitals and stuff while he put his mouth on hers.

Q: And that was something he made you do?

A: Yes.

H.K. stated that there were numerous times she was alone with [Aviles] while her mother was working. H.K. testified that she was sexually abused by [Aviles] on numerous occasions when [Aviles] was the only adult supervising her, and that [Aviles] would force her to engage in sexual intercourse by threatening physical harm to her mother or herself if she made disclosures about what had occurred.

H.K. detailed instances when [Aviles] forced her to engage in sexual intercourse, including instances in which she would awake in her bed at the age of five or six and find [Aviles] engaging in oral sex with her. When asked how many times this type of conduct occurred, H.K. stated the following:

Assistant District Attorney: Now, H.K., do you have any idea early on how many times or how often this would happen?

- 3 -

A: Like, as in, like, the first year?

Q: Yes.

A: Often. It wasn't as often as what, like, it, like, increased more as, like, I got older.

Q: All right. Often as in once a year, twice a year?

A: Way more than that.

Q: How would you describe often?

A: Like, probably, like, the first, like, year, it was probably, like, maybe, like, I don't know, it was just a lot, like 20 times. Like, it just kept happening. It was, like, my mom left, and it was, like, oh, or, like, whenever he wanted something that was how it is or I would just wake up and he would just be there.

H.K. explained that as time went on [Aviles] forced her to engage in other acts. Specifically, H.K. was able to recall when [Aviles] demanded she engage in oral sex with him while she waited in his car at her bus stop; a time when a friend in the neighborhood knocked on the door, but [Aviles] would not let her out to play until she finished engaging in oral sex with him; when her minor cousin was at her home for a sleepover and [Aviles] pulled them out of the bathtub and engaged in oral sex with H.K; an instance when [Aviles] was visibly angry, pulled her out of the bathtub, moved her to her mother's bedroom and engaged in anal intercourse with her, and the injuries she sustained as a result of this encounter. H.K. testified that [Aviles] put his mouth on her genitals "twenty or more times," and that he forced her to put her mouth on his genitals [] "more than twenty or thirty times."

The Commonwealth also presented testimony from minor victim L.A., [Aviles'] biological daughter, and maternal half-sister of victim H.K. L.A. was able to provide testimony of specific instances where [Aviles] touched her genitals. Specifically, L.A. stated that [Aviles] was "touching me with his hand, with his private parts, and his mouth down … below my waist, but above my knee area." L.A. stated that this happened about ten times. L.A. testified that [Aviles] genitals made contact with her "down

- 4 -

by my private parts and on my face," and that [Aviles] engaged in vaginal sexual intercourse with her while was lying on a bed in the mobile home. Additionally, L.A. stated that [Aviles] would force her to engage in oral intercourse with him, which she stated occurred more than three times, and testified to details regarding [Aviles] ejaculating during these acts.

L.A. testified that [Aviles] would threaten to hurt her or her mother if she said anything about the sexual abuse to anyone. L.A. testified that she was three years old when she stopped visiting [Aviles], at which point the sexual abuse stopped. Although L.A. was unable to provide distinct times when each act occurred, she stated the acts "happened many days … I had different clothes, but I'm not completely sure on what I was wearing. I know I had different clothes, because he would undress me."

In addition to testimony of the victims, the Commonwealth presented witness testimony from the victims' grandmother, Karen Lemanski ("Karen"). Karen stated that her grandchildren and daughter came to live with her in 2013 when L.A. was about three (3) years old. Karen became suspicious of sexual abuse when observing L.A. in the bathtub with L.A.'s brother, stating the following, "I was upstairs in the bathroom, and the kids were taking a bath together … I called [their mom] and said this … doesn't look right. This isn't normal. I mean, I had kids. They bathed together and you don't do this. … it wasn't something kids did." Karen stated that she made the victim's mother aware of her observations, and was told by their mother that she already knew about the abuse regarding victim L.A., but L.A. was too young to fully participate in a forensic interview. Karen attempted to speak to L.A. about the abuse, but the only thing L.A. would say is that [Aviles] "did bad things." During her testimony, Karen stated that she did not become aware of H.K.'s victimization until several years later, when it was disclosed to her by H.K. during a group counseling session in 2020. At that point, the investigation moved forward, and both victims received forensic interviews.

Karen's testimony was corroborated by the victim's mother, Crystal Lemanski ("Mother"). Mother testified that she became aware of abuse after picking up L.A. from a visit with [Aviles]. When asked how the visit went, L.A. made a disclosure to Mother, at which point Mother contacted Children and Youth Services ("CYS") and an evaluation was done. However, L.A. was only three

- 5 -

(3) years old at the time and was unable to cooperate with the forensic interview. Mother explained that during the forensic interview, L.A. would not speak with the investigators alone and continuously attempted to run out of the interview room toward Mother.

Further testimony included H.K.'s cousin, [N.L.], who corroborated the instance of sexual assault that occurred while the young girls were in the bathtub during a sleepover, recounting the following during her testimony:

> So, in one instance specifically, I remember H.K. and I were placed in the bath. I cannot remember specifically by who, but at the time it was only me, H.K. and Eddie at the time in the trailer, and I remember Eddie would, came in, I believe he went to the bathroom and the decided it was time for H.K. and I to get out of the bath. So he took both of us out, he leaned against the sink, looked at [H.K.] and said it was time or something, he said something along those lines, and H.K. began to perform oral sex on him and I was kind of pushed aside for a second, and then he grabbed my arm and pulled me in and then he had me go with him and also perform oral sex.

The Commonwealth also called Jo Ellen Bowman, Manager and Forensic Interviewer of Case Cottage, a Child Advocacy Center located in Armstrong County, as an expert witness in the field of victim dynamics and victim behavior. Ms. Bowman provided blind expert testimony regarding child victim behavior after sexual assault, including common occurrences of delayed reporting in minor victims, stating, "It's very uncommon for children to report child sexual assault immediately."

Trial Court Opinion, 2/13/24, at 2-10 (record citations and internal brackets omitted).

The jury trial was held from May 9, 2023, through May 12, 2023. Notably, the jury found Aviles not guilty of five counts of rape of child related to victim L.A. but found Aviles guilty of the remaining charges as noted above.

At sentencing, the aggregate prison sentence was a minimum 56 years to a maximum of 112 years. Aviles filed a timely post-sentence motion and requested the right to supplement the motion. The trial court granted the request to supplement, and Aviles filed a timely supplemental post-sentence motion raising the same claims he now presents on appeal. The trial court denied Aviles' motions and he filed a timely notice of appeal. Aviles complied with the trial court's order to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b).

Aviles now raises the following claims:

Whether [Aviles'] conviction should be reversed because the Commonwealth failed to present sufficient evidence to prove guilt beyond a reasonable doubt as to minor H.K. beyond 7 counts of involuntary deviate sexual intercourse?

Whether [Aviles'] conviction should be reversed because the Commonwealth failed to present sufficient evidence to prove guilt beyond a reasonable doubt as to minor H.K. beyond 7 counts of rape of a child?

Whether [Aviles'] conviction should be reversed because the Commonwealth failed to present sufficient evidence to prove guilt beyond a reasonable doubt as to minor L.A. beyond 2 counts of involuntary deviate sexual intercourse?

Whether [Aviles'] conviction should be reversed because the Commonwealth failed to present sufficient evidence to prove guilt beyond a reasonable doubt as to minor L.A. beyond 2 counts of rape of a child?

Whether [Aviles'] conviction should be reversed because the convictions go against the weight of the evidence as to minor H.K. beyond 7 counts of involuntary deviate sexual intercourse?

Whether [Aviles'] conviction should be reversed because the convictions go against the weight of the evidence as to minor H.K. beyond 7 counts of rape of a child?

Whether [Aviles'] conviction should be reversed because the convictions go against the weight of the evidence as to minor L.A. beyond 2 counts of involuntary deviate sexual intercourse?

Whether [Aviles'] conviction should be reversed because the convictions go against the weight of the evidence as to minor L.A. beyond 2 counts of rape of a child.

Appellant's Brief, at 8-9 (unnecessary capitalization and numbering removed).

Before we address the merits of Aviles' arguments, we must first determine if the claims are waived, as suggested by the trial court. **See** Trial Court Opinion, 2/13/24, at 12-13. The trial court found the claims waived because Aviles did "not state[] which element or elements of the crimes charged were allegedly insufficient." **Id.** at 12. Finding the claims too vague, the trial court asserted they were waived. **See id.** at 13. However, the trial court, to its credit, did then address the sufficiency and weight of the evidence in its Opinion filed pursuant to Pa.R.A.P. 1925.

We agree with the trial court. Although we find Aviles' inartful phrasing does sufficiently advise us that he is challenging the number of convictions for each crime, we do not know which elements he asserts the Commonwealth failed to prove for each crime.

> A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. To preserve a challenge to either the sufficiency or weight of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the elements or verdicts for which the appellant alleges that the evidence was

insufficient or against the weight of the evidence. This is so even where the trial court issued an opinion addressing the substance of the claim.

***Commonwealth v. Schofield***, 312 A.3d 921, 927 (Pa. Super. 2024) (citations and quotation marks omitted).

If Appellant wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. Where a [Rule] 1925(b) statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal.

***Commonwealth v Bonnett***, 239 A.3d 1096, 1106 (Pa. Super. 2020) (brackets, ellipsis, and citation omitted). As Aviles' Rule 1925(b) statement did not specify which element or elements were not proven on the three counts of IDSI and rape of a child for each child, or what element or elements are against the weight of the evidence, we find his claims challenging both the sufficiency of the evidence and weight of the evidence waived.[2]

Even if we were not to find waiver, Aviles' claims have no merit. First, Aviles challenges the sufficiency of the evidence for three counts of rape of a child related to victim H.K, three counts of IDSI with a child related to victim

---

[2] We note that Aviles further failed to comply with Rule 2119(a). ***See*** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"); ***Cf.*** Appellant's Brief, at 8-9, 14-21. Aviles presents eight questions to be argued, but only includes two argument sections within his brief. However, Aviles' noncompliance with Rule 2119(a) is not so substantial as to impede meaningful review and therefore we do not find the issues waived on this basis. We caution Aviles' counsel to comply strictly with our Rules of Appellate Procedure in any future appeals.

H.K, three counts of rape of a child related to victim L.A., and three counts of IDSI with a child related to victim L.A.

Aviles asserts the evidence was insufficient to convict him of the counts against H.K. counts because "[b]eyond these 7 [enumerated] times, while providing vague and imprecise estimates, [H.K.] admitted that she could not provide a specific number of times [each assault occurred.]" Appellant's Brief, at 16. Because H.K. could only provide the details for seven incidents, Aviles concludes he could only be convicted of seven counts of rape of a child and IDSI with a child related to victim H.K. *See id.*

In regard to victim L.A., Aviles argues that L.A. only stated it was "fair" to say she was sexually assaulted more than three times and therefore, the Commonwealth did not prove beyond a reasonable doubt that Aviles was guilty of five counts of rape of a child and IDSI with a child relating to victim L.A. *See id.* at 18-19. We find sufficient evidence for Aviles' convictions.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be

considered. Finally the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (brackets and citations omitted).

Rape of a child is codified at 18 Pa.C.S.A. § 3121(c): "A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c). "Sexual intercourse[,] [i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration, however slight; emission is not required." 18 Pa.C.S.A. § 3101. "The 'ordinary meaning' of sexual intercourse is not defined in the statute, but it refers to penetration of the vagina by the penis." *Commonwealth v. Brown*, 711 A.2d 444, 450 (Pa. 1998) (citation omitted).

IDSI with a child is codified at 18 Pa.C.S.A. § 3123(b): "A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). "Deviate sexual intercourse" is defined as "[s]exual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S.A. § 3101.

- 11 -

Here, the victims both testified that Aviles' assaults were ongoing until they no longer saw Aviles. *See* N.T. Trial, 5/10/23, at 79, 87-88, 138, 146, 150. Both victims were very young at the time Aviles assaulted them. *See id.* at 68-69, 150 (victim H.K indicating she lived with Aviles between ages five and nine; victim L.A. indicating she stopped seeing Aviles when she was three years old). Both victims testified to repeated assaults; the amount and frequency were difficult for them to remember. The trial court aptly noted that "child victims of sexual assault cannot be expected to remember every detail of the crimes they are subject to" and quoted *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa. Super. 2007), for that proposition. Trial Court Opinion, 2/13/24, at 18-19. What is required, however, is that the Commonwealth prove each element of the crimes beyond a reasonable doubt. The Commonwealth did that here.

H.K. testified, in relevant part, as follows:

Q. When you describe all of these events do you have any idea how many times this happened in total?

A. Like over the whole span? More than 20 or 30 times.

Q. And when you're talking about these events, specifically when he would tell you to put your mouth on his penis, is that fair?

A. Yes.

Q. What about when you describe waking up to him having your pants down and his mouth on you; is that correct?

A. Yes.

Q. Do you have any idea how many times that happened?

A. Around the same amount.

Q. Meaning?

A. Like 20 or more times, but I wasn't, like, always sleeping. I was up sometimes, too.

Q. Okay. But you couldn't say specifically the days or you couldn't say specifically the number, is that fair?

A. Yeah.

Q. Now, [H.K.], when you're describing him putting his mouth on your genitals, and I think you just said kissing it or something like that; is that right?

A. I said licking it, yeah.

Q. Licking it. Thank you. To the best of your recollection was he penetrating your genitals at all?

A. With his mouth?

Q. Yes.

A. Yes.

Q. And with his tongue?

A. Yes.

N.T. Trial, 5/10/23, at 100-102. The Commonwealth clearly presented sufficient evidence to find Aviles guilty of ten counts of rape of a child and ten counts of IDSI with a child relating to victim H.K.

Victim L.A. was only 13 years old at the time of trial. Relevant to Aviles' claims, L.A. testified as follows:

Q. [] And, [L.A.], can you tell me what he did?

A. He was touching me.

Q. How was he touching you?

A. He was touching me with his hand like below my waist down in my private parts. Do I have to explain it?

Q. Do you recall if that happened more than once?

A. Yeah.

Q. Do you have any idea how many times that happened?

A. Not completely, no.

Q. Do you think it was more than once?

A. Yeah.

Q. Are you sure that it was more than three times?

A. Yeah.

Q. Do you think it happened ten times?

A. Yeah, about that.

Q. Okay. Now, [L.A.], if I understand you correctly you were talking about him touching you on your privates under your clothes; is that correct?

A. Yes.

Q. Okay. And you're certain that he did that?

A. Yes.

Q. Now, this is a hard question. What was he doing when he was touching your privates?

A. I don't know how to explain it. He was doing a lot.

Q. What do you remember?

A. He was touching me with his hand, with his private parts, and his mouth down, like around, like, my, below my waist, but above my knee area kind of.

Q. Your private parts, is that fair to say?

A. Yeah.

*Id.* at 141-42. After detailing some of the assaults, L.A. was asked:

Q. Okay. And did that happen more than once?

A. Yeah.

Q. Do you have any idea how many times that happened?

A. Just, like, every single time that it happened with everywhere else.

Q. Okay. Is it fair to say it was more than three?

A. Yes.

Q. Would it be more than 10?

A. Not completely sure.

*Id.* at 144-45. Notably, Aviles was charged with ten counts of rape of a child relating to victim L.A. *See* Verdict, 5/12/23, at 7-9. The jury only found Aviles guilty of five counts of rape of a child relating to victim L.A. *See id.* There was clearly sufficient evidence for the jury to reach this verdict.

Finally, Aviles argues the verdict was against the weight of the evidence. The well-established standard of review is as follows:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

- 15 -

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interests of justice.

***Commonwealth v. McGhee***, 230 A.3d 1277, 1287 (Pa. Super. 2020)

(citations omitted).

> In rejecting Aviles' weight of the evidence claim, the trial court found:

> Both victims testified, in great detail, to multiple instances of sexual abuse they experienced by [Aviles]. Further, their accounts contained overlapping similarities; for example, during each encounter [Aviles] was the only supervising adult of the minor victims, the specific conduct of [Aviles] throughout the sexual assaults bore similarities, and [Aviles] used threats against the victim[s'] safety and the safety of their mother in order for the victims to comply with his demands and prevent future disclosure. Additionally, H.K.'s testimony was corroborated by [N.L.], who witnessed an instance of sexual abuse committed on H.K. by [Aviles].

Trial Court Opinion, 2/13/24, at 21-22. Based on a thorough review of the evidence presented at trial and the trial court's opinion, we cannot find the trial court abused its discretion.[3]

---

[3] We note that Aviles does not argue the trial court abused its discretion and seems to argue the underlying weight claim to this Court. ***See*** Appellant's
*(Footnote Continued Next Page)*

Therefore, we find Aviles' claims waived because he filed a vague Rule 1925(b) statement, but alternatively, we find sufficient evidence for his convictions and the trial court did not abuse its discretion in denying Aviles' assertion that the verdicts were against the weight of the evidence. Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


August 30, 2024

---

Brief, at 20-21 (arguing "[i]f the court choses to accept" the testimony of the two victims). This is the incorrect standard of review. We remind counsel that a weight of the evidence claim is presented to the sound discretion of the trial court and we only review a weight of the evidence claim for an abuse of that discretion. **See Commonwealth v. Juray**, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (comparing the standards for when a trial court and this Court are presented with a weight of the evidence claim).