J-S39022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JULMEEN MORGAN | : | |
| | : | |
| Appellant | : | No. 1227 EDA 2024 |

Appeal from the PCRA Order Entered March 27, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000120-2016

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 19, 2026**

Appellant Julmeen Morgan appeals from the order denying his Post-Conviction Relief Act[1] (PCRA) petition without a hearing. On appeal, Appellant claims that PCRA counsel was ineffective and requests a remand pursuant to ***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021). After review, we affirm.

This Court previously set forth the underlying facts of this case as follows:

> On October 6, 2015, Philadelphia Police Officers responded to the 2700 block of N. 8th Street in Philadelphia. There, they found Shaheed Henderson (hereinafter referred to as Shaheed)[FN1] slumped over in the driver's seat of a gold Lexus sedan suffering from a gunshot wound to the head. Victim Erick Ramirez was found lying on the sidewalk next to the open passenger side door of the vehicle. Ramirez was transported by police to Temple University Hospital where he was pronounced dead. Shaheed was

_____

[1] 42 Pa.C.S. §§ 9541-9546.

pronounced dead at the scene. A subsequent autopsy revealed Shaheed's cause of death to be two gunshot wounds to the head as well as a gunshot wound to the left hip. Ramirez's cause of death was a single gunshot wound to the head. Five .380 auto fired cartridge cases (FCC's) were recovered by police from the scene. A forensic analysis of these FCC's revealed that they had all been fired from the same .380 caliber handgun. A similar analysis of the bullet specimens recovered from Shaheed's body, bullet jacket and the bullet jacket fragment recovered from Ramirez's body determined that each of those pieces of ballistic evidence had been fired from the same .380 caliber firearm.

[FN1] The trial court indicated that it referenced Shaheed Henderson by his first name because three witnesses with the surname Henderson testified at trial.

The evidence adduced at trial revealed the chain of events that led to the murders had its genesis in an incident a week before the killings in which Appellant knocked on the door of Shaheed's residence and was greeted by Shaheed's mother, Emma Henderson. Appellant indicated to Ms. Henderson that Shaheed owed him $5.00 for using his cell phone or possessing his cell phone. Ms. Henderson then gave Appellant $5.00 on her son's behalf. However, when she informed her son of the incident, Shaheed stated that he did not owe Appellant $5.00. Shaheed subsequently indicated to his sister, Naeemah Henderson, that he felt the taking of $5.00 from his mother was disrespectful.

Two days before the shooting, Shaheed was seated in his vehicle outside the Henderson residence following a family function. Upon seeing Appellant walking up 8th Street with his girlfriend, Shaheed exited the vehicle and approached Appellant. After an exchange of words, Shaheed punched Appellant in the face knocking him to the ground. He then continued striking Appellant until the two were separated. During the altercation, Appellant's girlfriend was struck in the head and sustained a wound requiring six stitches.

Between 6:00 p.m. and 7:00 p.m., on October 5, 2015, Shaheed's brother, Kareem Henderson (Kareem), and Erick Ramirez were sitting on the steps of the Henderson residence when Appellant rode by on his bike with his right hand in the pocket of his hoodie. Appellant made a U-turn and then stopped in the middle of the street in front of the two men and[,] while still holding his right hand in his pocket, asked for Shaheed. When Kareem told Appellant that Shaheed wasn't there, Appellant responded that he

- 2 -

saw Shaheed's car and that "[Shaheed] was going to pay for what he did." He then rode off on the bike.

At approximately 1:00 a.m. on October 6, 2015, Shaheed left the Henderson residence to meet with Ramirez. The two then met with an associate, Lionel Brown, and proceeded to Brown's residence in Shaheed's Lexus to get wrapping papers to smoke marijuana. While en route, Shaheed began discussing a problem he had with Appellant. As the three men drove to Brown's house, they passed Appellant near the intersection of Cambria and Franklin Streets. At that time, Brown observed that Appellant was wearing a black hoodie and tan pants.

Upon their arrival at Brown's residence, Brown exited the vehicle. As he entered his residence, he observed Appellant approaching Shaheed's vehicle. Shaheed then drove off and Appellant watched Shaheed's vehicle as it drove away. Shaheed and Ramirez picked Brown up again a short time later and they proceeded to 8th Street and parked across the street from Shaheed's house. A few minutes later as the men were sitting in the vehicle, shots rang out from outside the driver's side. Brown then exited the vehicle. As he did so, he observed Appellant, who was still wearing a black hoodie and tan pants, on the driver's side shooting. Brown then fled through a nearby parking lot. Later in the morning of October 6, 2015, Brown approached detectives, indicated he had been present at the shooting and identified Appellant as the shooter. He was then brought to the homicide unit where he gave a signed statement identifying Appellant as the shooter.

The shooting was also observed by eyewitness Mario Aguirre Ruiz. Ruiz was in the front bedroom of his residence on 8th Street when he heard gunshots. He looked out the window and observed the shooter standing at the post between the driver's side front and rear of Shaheed's vehicle. While the shooter was still on the driver's side, Ruiz observed a person flee from the vehicle. The shooter then proceeded to the passenger side, grabbed the front passenger by the hair as he exited the vehicle and shot him in the head. When the shooter's hoodie came down, Ruiz was able to catch a glimpse of the shooter's face. The shooter then fled toward Somerset St. As he did so, he placed the firearm inside the waistband of his pants. Ruiz was subsequently interviewed on October 7, 2019 by homicide [detectives] relating his observations [sic] and was shown a sequential photo array. When shown Appellant's photo, Ruiz indicated, "it's a possibility the male's face looks longer."

In the early morning hours of October 6, 2015, Appellant arrived at the home of his girlfriend, Daysha Gregory. Appellant told Gregory he needed her to tell the police he had been with her all night because he, "got into some shit."

A subsequent forensic analysis of video recovered from the crime scene showed an individual in a dark hoodie and tan pants fleeing from the scene. No handgun could be seen in the video as the individual fled.

Appellant was not licensed to carry a firearm at the time of the killings.

*Commonwealth v. Morgan*, 2020 WL 3791674, at *1-2 (Pa. Super. filed July 7, 2020) (citing Trial Ct. Op., 6/21/19, at 2-6) (unpublished mem.) (some formatting altered).

Following a jury trial, Appellant was convicted of two counts of first-degree murder, and one count each of possession of an instrument of crime (PIC), firearms not to be carried without a license, and carrying a firearm on the public streets of Philadelphia.[2,3] Appellant was sentenced to consecutive

_____

[2] 18 Pa.C.S. §§ 2502(a), 907(a), 6106(a)(1), and 6108, respectively.

[3] Appellant was convicted of charges at two docket numbers. At Docket Number 120 of 2016, Appellant was convicted of first-degree murder in relation to the murder of Shaheed Henderson as well as the weapons charges. *See Morgan*, 2020 WL 3791674, at *3. At Docket Number 121 of 2016, Appellant was convicted of first-degree murder in relation to the murder of Erick Ramirez. *See id.* On April 23, 2025, Appellant's appeal of the case at Docket Number 121 of 2016 was dismissed for failure to file a brief. *See* 2379 EDA 2024, Order, 4/23/25.

sentences of life without parole for each of his first-degree murder convictions.[4]

On direct appeal, this Court affirmed Appellant's judgment of sentence on July 7, 2020. **See id.** at *1, *5. Appellant filed a petition for allowance of appeal with our Supreme Court, which was denied on October 28, 2020. **See Commonwealth v. Morgan**, 258 EAL 2020, 240 A.3d 881 (Pa. 2020).

Appellant filed a PCRA petition on December 29, 2021. The PCRA court appointed counsel who filed a no merit letter pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) and **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) on December 26, 2023. The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's PCRA petition without a hearing on February 8, 2024. On March 27, 2024, the PCRA court dismissed Appellant's PCRA petition and granted PCRA counsel's motion to withdraw.

Appellant filed a timely notice of appeal. On May 7, 2024, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days of the entry of the order. Appellant requested an extension to file his Rule 1925(b) statement on June 7, 2024. The PCRA court granted Appellant's extension on June 26, 2024. Appellant did not file a Rule 1925(b)

_____

[4] The trial court also imposed sentences of two and a half to five years' incarceration for PIC, two and a half to five years' incarceration for carrying a firearm on the public streets of Philadelphia, and three and a half to seven years' incarceration for carrying a firearm without a license. These sentences were imposed to run concurrent to each other as well as to the sentences for the homicide charges.

statement. The PCRA court filed its Rule 1925(a) opinion on August 30, 2024, and addressed the issues Appellant raised in his PCRA petition.

Appellant raises the following issue for our review:

Whether this Court should remand in accordance with **Commonwealth v. Bradley**, [261 A.3d 381 (Pa. 2021)?]

Appellant's Brief at 4 (some formatting altered).

Before addressing the merits of Appellant's claim, we must first consider whether he properly preserved the issue for review. **See Commonwealth v. Edmondson**, 718 A.2d 751, 752 n.7 (Pa. 1998) (explaining that appellate courts may raise the issue of waiver *sua sponte*).

As this Court has previously stated:

Rule 1925(b) "is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." **Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa. Super. 2020); *see also* Pa.R.A.P. 302(a) (issues cannot be raised for the first time on appeal). "[A]ny issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." **Bonnett**, 239 A.3d at 1106 (citing **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306, 309 (1998)); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement ... are waived."). Although Appellant is proceeding *pro se*, under Pennsylvania law, *pro se* defendants are subject to the same rules of procedure as are represented defendants. **See Commonwealth v. Williams**, 586 Pa. 553, 896 A.2d 523, 534 (2006).

**Commonwealth v. Snyder**, 316 A.3d 178, 181 (Pa. Super. 2024).

"[A] PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **See id.**

- 6 -

at 182 (quoting **Bradley**, 261 A.3d at 401) (some formatting altered). Where a PCRA court denies a PCRA petition, permits PCRA counsel to withdraw based on their **Turner**/**Finley** letter, and orders the petitioner to file a *pro se* Rule 1925(b) statement, Appellant's first opportunity to raise PCRA counsel's ineffective assistance is in the court-ordered Rule 1925(b) statement. **See id.** at 182. In this context, failure to include claims of PCRA counsel's ineffective assistance in a Rule 1925(b) statement will result in waiver of the issue on appeal. **See id.** at 183.

Here, PCRA counsel filed a **Turney**/**Finley** letter and a motion to withdraw. **See Finley** Letter, 12/26/23; Mot. to Withdraw, 12/26/23. The PCRA court subsequently dismissed Appellant's petition and granted PCRA counsel's motion to withdraw. **See** Trial Ct. Order, 3/28/24. At that point, Appellant was *pro se*. **See Commonwealth v. Gibson**, 318 A.3d 927, 933 (Pa. Super. 2024) (stating that "once the [PCRA] court permits PCRA counsel to withdraw after filing a **Turner**/**Finley** 'no-merit' letter, an appellant is no longer entitled to the appointment of counsel on appeal"); **see also Snyder**, 316 A.3d at 182 (stating that, once "the PCRA court denied appellant's petition and his PCRA counsel was permitted to withdraw[,] Appellant[ was] proceeding *pro se*" (some formatting altered)). The PCRA court then ordered Appellant to file a Rule 1925(b) statement. **See** Trial Ct. Order, 5/7/24.[5]

---

[5] The order included all the content required by Pa.R.A.P. 1925(b)(3) and was accompanied with a proof of service showing it was mailed by certified mail to Appellant. **See** Trial Ct. Order, 5/7/24; **see also** Pa.R.A.P. 1925(b)(3).

Appellant sought an extension to file his Rule 1925(b) statement on June 7, 2024, and the trial court granted Appellant an additional thirty days to file the statement on June 26, 2024. **See** Request for Extension, 6/7/24; Trial Ct. Order, 6/26/24. However, for unknown reasons, although Appellant was ordered to file a Rule 1925(b) statement and granted an extension of time to file such a statement, he failed to do so. Accordingly, Appellant's claim of ineffective assistance of PCRA counsel is waived. **See Snyder**, 316 A.3d at 181. For these reasons, no relief is due.[6]

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/19/2026

---

[6] We note that Appellant also argues several claims of ineffective assistance of trial counsel in his appellate brief. **See** Appellant's Brief at 11-13. These claims are also waived for failure to file a Rule 1925(b) statement. **See** Pa.R.A.P. 302(a); **Bonnett**, 239 A.3d at 1106.